[S. F. No. 17976. In Bank. Feb. 7, 1950.]

GRACE B. KEENAN, Appellant, v. SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., Respondents.

Alexander S. Keenan, Jr., and Albert A. Spiegel for Appellant.

Carroll, Davis & Freidenrich as Amici Curiae on behalf of Appellant.

John J. O'Toole, Dion R. Holm, City Attorneys, Walter A. Dold, Chief Deputy City Attorney, and Irving G. Breyer for Respondents.

Harold W. Kennedy, County Counsel (Los Angeles), and Wm. E. Lamoreaux, Deputy County Counsel, as Amici Curiae on behalf of Respondents.

EDMONDS, J.—Grace B. Keenan, while serving as a probationary teacher in the elementary schools of San Francisco, was dismissed by the Board of Education because of physical disability. Her appeal from the judgment denying a writ of mandate requiring the school authorities to reemploy her, presents for decision the question as to the right of the Board of Education to terminate her services without a hearing and also challenges the sufficiency of the medical evidence to justify its action.

The parties are essentially in agreement as to the facts, which may be summarized as follows: Mrs. Keenan was appointed a probationary elementary school teacher in the San Francisco Unified School District on September 1, 1942, and commenced her duties on February 1, 1943. She taught the balance of that school year and, in the fall term, until October 10th, when she became ill of diabetes.

Because of her illness, Mrs. Keenan applied for and was granted a leave of absence. She resumed her duties February 1, 1944. Thereafter she taught for a period of three and one-half years without once being absent. During that time, she received the highest efficiency ratings.

On March 28, 1947, Mrs. Keenan was notified that her services would be terminated as of the following June 30th. This action was taken by the school authorities upon a medical history commencing about the time she obtained her leave of absence for illness. The record shows that she became a diabetic in October, 1943. Her physician informed the school authorities that she had experienced a diabetic coma, and would be unable to teach for at least six weeks. When she returned to duty, approximately two months later, she was examined by Dr. Yoell, acting for the Board of Education. During the examination she informed Dr. Yoell that she had diabetes and was receiving treatment from Dr. Shepardson, a specialist in that field.

Dr. Yoell made no special examination for diabetes but he obtained a written report from Dr. Shepardson as to Mrs.

Keenan's condition. Thereupon, Dr. Yoell certified to the school authorities that she was "physically capable" of performing her duties.

In January, 1947, Mrs. Keenan again was examined by Dr. Yoell in order to determine her fitness for permanent tenure. By that time, Dr. Yoell had been informed by Dr. Shepardson that Mrs. Keenan was a "fixed diabetic" under regular insulin treatment. Because of the diabetic condition, Dr. Yoell refused to certify her as meeting the requirements for permanent status but he found her to be physically fit for temporary work.

Mrs. Keenan learned of Dr. Yoell's conclusions and, by letter of her counsel addressed to the Board of Education, protested his recommendation. The board then requested the superintendent to reinvestigate the matter and refer it to the board's physician. On March 26, 1947, the Board of Examiners approved Dr. Yoell's determination. Mrs. Keenan was not present nor was she represented at the meeting of either board which considered the advisability of continuing her employment.

Mrs. Keenan was advised of this action by letter and informed that she would be dropped from the probationary list as of June 30th. The letter also stated that "Because of your acknowledged success as a superior teacher we greatly regret the necessity of the above action. In the event that you care to work as a substitute teacher, will you please notify us so that we can arrange assignments suitable to you."

Formal action dismissing Mrs. Keenan was taken by the Board of Education at a meeting on May 6, 1947. Mrs. Keenan was not notified of the meeting and was not present. The resolution adopted by the board recites that because she "has not been approved by the physician employed by the Board of Education for permanency on the basis of her physical condition . . . her dismissal is deemed necessary as being for the welfare of the schools and pupils thereof." It was stipulated at the trial that she was not accorded a hearing before the board.

Mrs. Keenan then filed her petition for a writ of mandate to require the Board of Education to reemploy her, to certify that she is a permanent elementary school teacher, and to reimburse her for salary due since the date of discharge. An alternative writ was issued. When the matter came on for trial, her demand for a trial by jury was denied upon the ground that such a request presents a question for the exer-

cise of judicial discretion and that the issues for determination were mixed questions of law and fact. Upon the evidence which has been stated, the trial court held that the dismissal was not arbitrary, but related solely to the welfare of the schools and pupils; also, that it was authorized by and made in compliance with the provisions of the Education Code. The appeal is from the judgment subsequently entered discharging the alternative writ of mandate and denying Mrs. Keenan any relief.

Mrs. Keenan's principal ground for reversal of the judgment is that she was not accorded a hearing as required by section 13583 of the Education Code. The Board of Education and its members take the position that it acted reasonably in refusing permanent tenure to a diabetic teacher and in the interest of ". . . the welfare of the schools and the pupils thereof (sec. 13583, Cal. Education Code)." They did more than was necessary, it is argued, prior to dismissing the appellant under the provisions of sections 13582 and 13583, California Education Code. No hearing was requested by her attorney and none is required; in fact, it is claimed, she was given notice and accorded a hearing. To hold otherwise, it is said, would afford a probationary teacher in a district of 60,000 average daily attendance more protection than that enjoyed by a permanent teacher.

As amicus curiae in support of the San Francisco School Board, the Board of Education of Los Angeles contends that section 13583 of the Education Code is invalid because it is special legislation enacted contrary to the provisions of the state Constitution. A second ground of attack is that the statute is based upon an unreasonable classification contrary to the provisions of the equal protection clause of the federal Constitution.

The Education Code provides: "On or before the fifteenth day of May in any year the governing board may give notice in writing to a probationary employee that his services will not be required for the ensuing year." (§ 13582.) "Anything in section 13582 to the contrary notwithstanding, governing boards of school districts having an average daily attendance of 60,000 or more pupils shall dismiss probationary employees for cause only. The determination of the board as to the sufficiency of the cause for dismissal shall be conclusive, but the cause shall relate solely to the welfare of the schools and the pupils thereof." (§ 13583.)

█ The intention of the Legislature to make a different requirement for the dismissal of probationary teachers in a large district than that applicable in areas having a smaller population is clearly manifested by the imperative words, "Anything in section 13582 notwithstanding . . ." and by the use of the explicit numerical designation. Further evidence of the legislative purpose is the fact that section 13581 of the Education Code, which relates to dismissal during the school year for cause, is applicable without qualification to every probationary teacher regardless of the size of the school district in which he is employed.

"A law, to be general in its scope . . . need not include all classes of individuals in the state. It answers the constitutional requirements if it relates to and acts uniformly upon the whole of any single class of individuals or objects and the classification is founded upon some natural, intrinsic or constitutional distinction. . . . If good ground for classification exists, such classification is not void because it does not embrace within it every other class which might be included." (*Powers Farms* v. *Consolidated Irr. Dist.*, 19 Cal.2d 123, 131 [119 P.2d 717], quoting with approval, *Heron* v. *Riley*, 209 Cal. 507, 518 [289 P. 160].)

█ It is common practice, upheld by the courts almost without exception, to use population as a basis for the determination of areas in which particular requirements shall apply. A law does not violate the requirement as to the equal protection of the laws merely because its operation is confined to areas having a designated population and upwards. (*Mason* v. *Missouri*, 179 U.S. 328 [21 S.Ct. 125, 45 L.Ed. 214]; *Tucker* v. *Barnum*, 144 Cal. 266 [77 P. 919]; *Douglas* v. *People*, 225 Ill. 536 [80 N.E. 341, 116 Am.St.Rep. 162, 8 L.R.A.N.S. 1116].) Many different reasons justify such classification. █ A probable reason for the legislative action here challenged is that, in the larger school districts, usually the probationary teacher is personally unknown to the members of the school board. Under such circumstances, notice and hearing before discharge reasonably may be imposed as a condition of such action. On the other hand, in the smaller districts where, more or less, the teachers are well known in the community, a requirement for the formal presentation of charges against a teacher who has been employed on a trial basis is not so necessary to insure a fair administration of the school system. Certainly the classification fixed by section 13583 of the Education Code is neither arbitrary nor unreasonable and does

not violate either the federal or state constitutional guarantees.

■ Considering the merits of Mrs. Keenan's position, since the decision in *Bannerman* v. *Boyle,* 160 Cal. 197 [116 P. 732], it has repeatedly been held ". . . that if by statute an officer or civil service employee may not be removed or discharged except for cause, the clear implication is that there be afforded an opportunity for a full hearing to accomplish his removal; that unless the statute expressly negatives the necessity of a hearing, common fairness and justice compel the inclusion of such a requirement by implication." (*Steen* v. *Board of Civil Service Commrs.,* 26 Cal.2d 716, 723 [160 P.2d 816]; see, also, *Ratliff* v. *Lampton,* 32 Cal.2d 226 [195 P.2d 792]; *Covert* v. *State Board of Equalization,* 29 Cal.2d 125 [173 P.2d 545]; *Carroll* v. *California Horse Racing Board,* 16 Cal. 2d 164 [105 P.2d 110]; *Welch* v. *Ware,* 161 Cal. 641 [119 P. 1080].) The Legislature has specified that the probationary teacher in the larger school districts shall not be dismissed without notice and hearing. In doing so, it enlarged the rights of such teachers, but it did not entirely change their status. ■ Although a permanent teacher may be dismissed only for the causes enumerated in section 13521 of the Education Code (immoral or unprofessional conduct, dishonesty, evident unfitness for service, conviction of a felony or of any crime involving moral turpitude, and similar offenses), the probationary teacher in the larger school districts may be "dismissed for cause" (Ed. Code, § 13583). Under these statutory provisions, the probationary teacher in a district having pupils in excess of the specified number may be dismissed for much less cause than that justifying charges against a permanent teacher. For example, the failure to conform with a reasonable standard of excellence during the probationary period may constitute a sufficient cause for terminating the employment.

■ An additional difference between the status, in a district having more than 60,000 students, of a probationary teacher and that of one who has completed three years of service lies in the procedure authorized by the Legislature for the removal of such persons. The one who has completed the probationary term of teaching can be dismissed over his objection only by a judgment of the superior court in a proceeding brought by the governing board. (Ed. Code, § 13529.) For the reasons which have been stated, a probationary teacher is subject to dismissal by the governing

board, with whatever rights the law allows to a review of the administrative proceeding in the superior court. (See: *LaPrade* v. *Department of Water & Power*, 27 Cal.2d 47 [162 P.2d 13] ; *Steen* v. *Board of Civil Service Commrs.*, 26 Cal.2d 716 [160 P.2d 816].)

 Mrs. Keenan was a probationary teacher in a district having more than 60,000 average daily attendance and she could not be dismissed except for cause upon notice and hearing. Physical disability may well be a cause within the meaning of the statute. But the cause relied upon by the school authorities must be specified and a hearing afforded the teacher to meet the charge. Mrs. Keenan's informal interviews with administrative officers of the Board of Education did not constitute a hearing as contemplated by the statute, nor did they amount to a waiver of her right to a hearing or estop her from complaining of a lack of hearing.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.