[No. S047491. Apr. 29, 1996.]

BOARD OF EDUCATION OF THE ROUND VALLEY UNIFIED
SCHOOL DISTRICT et al., Plaintiffs and Respondents, v.
ROUND VALLEY TEACHERS ASSOCIATION, Defendant and
Appellant.

COUNSEL

Diane Ross, Beverly Tucker, Ramon Romero and A. Eugene Huguenin, Jr., for Defendant and Appellant.

Robert J. Henry, Joseph C. Kinkade, Patrick K. Rafferty, Lozano, Smith, Smith, Woliver & Behrens, Diana K. Smith and Loren A. Carjulia for Plaintiffs and Respondents.

John Bukey, Fekete, Carton, Hartsel, Grass, Ronch, Peters & Inman and Frank J. Fekete as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**LUCAS, C. J.**—We granted review to determine whether a school board may, through collective bargaining, agree to give greater procedural protections to probationary employees than those set forth in Education Code section 44929.21, subdivision (b) (section 44929.21(b); all statutory references are to the Education Code unless otherwise noted). Section 44929.21(b) provides procedures that a school district must follow when notifying a probationary employee of its "decision to reelect or not reelect the employee for the next succeeding school year to the position," but otherwise allows districts to decline to reelect a probationary employee without cause. (See *Fontana Teachers Assn.* v. *Fontana Unified School Dist.* (1990) 201 Cal.App.3d 1517 [247 Cal.Rptr. 761] (*Fontana*); *Grimsley* v. *Board of Trustees* (1987) 189 Cal.App.3d 1440 [235 Cal.Rptr. 85] (*Grimsley*).) For the reasons discussed below, we conclude section 44929.21 preempts the procedural protections contained in the collective bargaining agreement, and that the arbitrator exceeded his powers in this case by purporting to give effect to those preempted provisions. Because the arbitrator exceeded his powers by enforcing provisions of the preempted agreement, we vacate his award pursuant to Code of Civil Procedure section 1286.2, and *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*). Accordingly, we reverse the Court of Appeal judgment.

### FACTS

The Round Valley Teachers Association (Association) and the Round Valley Unified School District (District) entered into a collective bargaining agreement effective from July 1, 1987, to June 30, 1990. Article 19, section B(1) of the agreement set forth procedures for the dismissal or decision not

to reelect probationary teachers for the following school year. The agreement provided: "Prior to any notice of dismissal/[decision not to reelect] any probationary teacher, the Superintendent shall give notice to the employee no less than thirty (30) days prior to the final notice of dismissal/[decision not to reelect]. Such notice shall include: [¶] . . . [¶] b. Notice that the employee has fifteen (15) days to appeal the dismissal/[decision not to reelect]. [¶] c. The proposed specific reasons for the dismissal/[decision not to reelect] as they relate to the teacher's alleged incompetency to teach (including copies of summary evaluations upon which the decision was based)." In section B(2) of article 19, "just cause" is required for dismissal or decision not to reelect probationary teachers.

In 1990, District's superintendent notified Kurt Gritts, a probationary teacher, that District would not renew his teaching contract for the 1990-1991 school year. District's notice did not comply with article 19, section B(1) of the collective bargaining agreement because it failed to provide reasons for not reelecting Gritts or allow for an appeal of District's decision.

Gritts thereafter filed with District a grievance alleging that the school district had violated article 19, section B(1) of the agreement. Although District insisted the grievance was not arbitrable, the superior court granted Association's motion to compel arbitration. The arbitrator found District had violated the agreement and ordered it to comply with the procedures set forth in article 19, section B(1). The arbitrator also ordered District to reconsider its decision not to renew Gritts's teaching contract. Although District challenged the validity of the contractual provisions, the arbitrator left that issue to judicial determination.

District thereafter filed a petition to vacate the arbitration award. District asserted the arbitrator exceeded his powers in ordering District to comply with the agreement because section 44929.21(b), which governs exclusively the procedures for the reelection of probationary teachers, preempted the reelection provisions of article 19, section B(1) of the agreement. Section 44929.21(b) provides that in school districts with "an average daily attendance of 250 or more" (like District here), probationary employees who have served two consecutive years in a position requiring certification, and are reelected for a third year, become permanent employees of the district. Section 44929.21(b) further provides in part: "The governing board shall notify the employee, on or before March 15 of the employee's second complete consecutive school year of employment by the district in a position or positions requiring certification qualifications, of the decision to reelect or not reelect the employee for the next succeeding school year to the position. In the event that the governing board does not give notice pursuant to this

section on or before March 15, the employee shall be deemed reelected for the next succeeding school year." Unlike article 19, section B(1) of the agreement, discussed above, section 44929.21(b) does not provide for a hearing or statement of reasons in the event a probationary employee is not reelected in his or her third year.

The trial court granted District's petition, and vacated the award. It concluded the arbitrator exceeded his powers by giving effect to provisions of the collective bargaining agreement which were in conflict with, and superseded by, section 44929.21(b), and Government Code sections 3540 through 3549.3. The Government Code provisions establish a system of collective bargaining for school district employees, and limit negotiations between a school district and an employee organization to matters relating to wages, hours "and other terms and conditions of employment." (Gov. Code, § 3543.2, subd. (a).) The Government Code specifically states that "[t]his chapter shall not supersede other provisions of the Education Code." (Gov. Code, § 3540.) The trial court reasoned that District had no power to agree to provisions in a collective bargaining agreement that conflicted with specific provisions of the Education Code.

The Court of Appeal reversed the trial court judgment. It held that the procedural protections provided by article 19, section B(1) of the agreement did not conflict with the directives in section 44929.21(b), and were thus valid and enforceable. Accordingly, the Court of Appeal concluded, the arbitrator did not exceed his authority in giving effect to the collective bargaining agreement. We granted District's petition for review.

## DISCUSSION

### 1. *Judicial Review of Arbitration Award*

In granting his award, the arbitrator made the following findings:

"1. The grievance is arbitrable.

"2. The District violated Article 19, Section B (1) (a-f) with regard to [District's decision not to reelect Gritts].

"3. As a remedy, the District is directed to comply with the procedural requirements of Article 19, Section (B) (1) (a-f), except that the District is not required to reinstate [Gritts] prior to providing the notice required therein. The District is further directed, within 30 days after written notice of the matters described in subsections (c) and (d), to reconsider the decision declining renewal of [Gritts's] teaching contract and to grant a request by

[Gritts] and/or the Association to address the Board of Education with respect to the renewal or non-renewal of [Gritts's] contract."

 Our first inquiry is whether the arbitrator's award enforcing specific procedural provisions of the collective bargaining agreement is a proper subject of judicial review. Code of Civil Procedure section 1286.2 sets forth limited grounds for vacating an arbitrator's award and the only one that may apply here is contained in subdivision (d). Pursuant to that subdivision, a court shall vacate the award if the arbitrator exceeded his or her powers in making the award and "the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (d).)

As the Court of Appeal observed, we have made it clear that in light of the strong public policy in favor of private arbitration, judicial review of an arbitrator's award is quite limited. In *Moncharsh, supra,* 3 Cal.4th at pages 8 through 13, we articulated the general rule that the merits of an arbitration award, either on questions of fact or of law, are not subject to judicial review. *Moncharsh* limited judicial review to the statutory grounds set forth in Code of Civil Procedure section 1286.2 or 1286.6 (correction of award). (*Moncharsh, supra,* 3 Cal.4th at p. 13.) We further explained, "We recognize that there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision when a party claims illegality affects only a portion of the underlying contract. Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's *statutory rights.*" (*Id.* at p. 32, italics added.)

We further delineated "the standard for measuring the scope of the arbitrators' authority" in *Advanced Micro Devices, Inc.* v. *Intel Corp.* (1994) 9 Cal.4th 362 [36 Cal.Rptr.2d 581, 885 P.2d 994] (*Advanced Micro Devices*). There we held that "the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers." (*Id.* at p. 372.) We noted, however, that the deference accorded an arbitrator's decision under the arbitration agreement is not unrestricted, and indeed, is limited by the agreement to arbitrate. (*Id.* at p. 375.) We also recognized that courts retain the authority to overturn arbitration awards "as beyond the arbitrator's powers, whether for an unauthorized remedy or [a] decision on an unsubmitted issue." (*Ibid.*)

The Court of Appeal acknowledged the limitations placed on judicial review of an arbitration award, but held that because Association's collective

bargaining agreement did not conflict with section 44929.21(b), the arbitrator did not exceed his power in providing an award. By negative implication, however, this analysis suggests the arbitrator would have acted in excess of his powers had he concluded the collective bargaining agreement provisions at issue were inconsistent with the Education Code. ■ The Court of Appeal failed to recognize that the question of the reviewability of the arbitrator's award must be independent of its conclusion whether the award should be upheld. ■ Thus, the question remains whether we have the authority, in light of our decisions in *Moncharsh, supra*, 3 Cal.4th 1, and *Advanced Micro Devices, supra*, 9 Cal.4th 362, to review the arbitrator's award.

Association argues that deference to an arbitrator's decision must be "even stronger in the labor-management field" and that courts are more constrained in their power to vacate an arbitration award in the labor context than in other types of arbitration. (See *Social Services Union* v. *Alameda County Training & Employment Bd.* (1989) 207 Cal.App.3d 1458, 1464 [255 Cal.Rptr. 746]; see also *That Way Production Co.* v. *Directors Guild of America, Inc.* (1979) 96 Cal.App.3d 960, 966 [158 Cal.Rptr. 475].) The restriction on the power to vacate an arbitration award in the labor context, Association claims, is based on the policy of promoting peaceful employer-employee relations. (See *Delta Lines Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 965-966 [136 Cal.Rptr. 345].) Association concludes that because deference must be accorded an arbitrator's award in the context of labor negotiations, *Moncharsh* and *Advanced Micro Devices* provide no ground for vacating the present arbitration award.

As we observed in both *Moncharsh* and *Advanced Micro Devices*, however, there may be exceptional circumstances justifying judicial review of an arbitrator's decision, including cases in which granting finality to an award would be inconsistent with a party's *statutory rights*. (*Moncharsh, supra*, 3 Cal.4th at p. 32; *Advanced Micro Devices, supra*, 9 Cal.4th at p. 375; see Code Civ. Proc., § 1286.2, subd. (d).) In this case, District asserts both that: (1) it had *the statutory right* under the Education Code not to retain a probationary teacher without cause or a right to a hearing, and that (2) the entire reelection issue cannot, pursuant to the Government Code, be made the subject of collective bargaining. Therefore, District argues, the subject of the reelection of probationary teachers was improperly included in the collective bargaining agreement at the outset, and thus was never properly subject to the arbitration provisions of the agreement. In short, District asserts the arbitrator exceeded his powers, as that phrase is used in Code of Civil Procedure section 1286.2, subdivision (d), by granting relief pursuant to the terms of the collective bargaining agreement that violated District's specific statutory rights as set forth in the Education and Government Codes.

Although we adhere to our holding in *Moncharsh* that arbitrator finality is the rule rather than the exception, we agree that—if District is correct concerning the scope of its statutory rights under the Education and Government Codes—this case presents the exceptional circumstance that allows for judicial review of the arbitrator's decision. Should District's interpretation of the law prevail, we would be faced with an "explicit legislative expression of public policy" that issues involving the reelection of probationary teachers not be subject to arbitration. (See discussion, *post,* at pp. 284-285.) This expression of public policy would thus conflict with the expressed legislative intent to limit private arbitration awards to statutory grounds for judicial review. Thus, rigidly insisting on arbitral finality here would be "inconsistent with the protection of a party's [i.e., District's] statutory rights." (*Moncharsh, supra,* 3 Cal.4th at p. 32; see *Advanced Micro Devices, supra,* 9 Cal.4th at p. 378.)

### 2. *Conflict With the Education Code*

▮ Having concluded the matter is subject to judicial review, we next turn to the question of whether the procedural protections set forth in the collective bargaining agreement conflict with pertinent provisions of the Education Code, and, if so, whether they are preempted.

### A. *Background*

#### (i) *Education Code*

Prior to 1983, the Education Code provided that school districts must give notice by March 15 and an opportunity for a hearing at which the district must demonstrate good cause for its decision not to reelect a probationary teacher. (Former § 13443.) Under early statutory provisions relating to the hiring, dismissal and reelection of teachers, all teachers were subject to annual hiring decisions. Moreover, school districts exercised absolute discretion in making those decisions. (*Cousins* v. *Weaverville Elementary School Dist.* (1994) 24 Cal.App.4th 1846, 1849 [30 Cal.Rptr.2d 310] (*Cousins*).) Thereafter, the Legislature imposed a two-tiered system. It distinguished between permanent employees, who enjoyed tenure and could only be dismissed for cause, and probationary employees, who could only be dismissed for cause during the school year but remained subject to a district's decision not to reelect them at the end of each school year with or without cause. (*Ibid.*) That right was expanded in 1935 to require, in larger districts, that any decision not to reelect be for cause. Cause could only relate to the welfare of the schools and pupils. (*Ibid.*) "While the right to a hearing was not expressly granted, it was implied (*Keenan* v. *S.F. Unified*

*School District* (1950) 34 Cal.2d 708 [214 P.2d 382]; *Tucker* v. *S.F. Unified School Dist.* (1952) 111 Cal.App.2d 875 [245 P.2d 597]) and in 1953 was made express. (Ed. Code, § 13583 as amended by Stats. 1953, ch. 1040, § 1, p. 2508.) These requirements survived subsequent amendments to the Education Code until 1983." (*Cousins, supra,* 24 Cal.App.4th at p. 1850.) The *Cousins* court noted, however, that the exception providing for dismissal with cause remained for probationary employees subject to layoff under section 44955, which, even today, requires a school district to provide the probationary teacher with notice and right to a hearing as prescribed by section 44949. (*Cousins, supra,* 24 Cal.App.4th at p. 1850.)

In 1976, we addressed the employment rights of probationary teachers in *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818 [129 Cal.Rptr. 443, 548 P.2d 1115] (*Turner*).) The *Turner* court observed, "In considering the student's need for education, the teacher's need for job security, and the school board's need for flexibility in evaluating and hiring employees who may remain 40 years, the Legislature may determine whether a teacher's vested right shall be granted, postponed or denied. (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 577 [33 L.Ed.2d 548, 560-561, 92 S.Ct. 2701].) Our school system is established not to provide jobs for teachers but rather to educate the young. Establishing a test period for teachers to prove themselves is essential to a good education system. While refusal to grant total job security at the time of initial hiring may be repugnant to those pursuing a teaching career, repeated statutory amendments relating to probationary teachers' rights (see Comment, *Probationary Teacher Dismissal* (1974) 21 UCLA L.Rev. 1257, 1260-1264), reveal that the Legislature has been well aware of the delicate balancing necessary to accommodate these sometimes competing interests." (*Turner, supra,* 16 Cal.3d at p. 825.)

In 1983, the Legislature adopted Senate Bill No. 813 (sometimes referred to as the Hughes-Hart Educational Reform Act of 1983), which amended several sections of the Education Code, and reduced the probationary period of teachers from three to two years. (See former § 44882, subd. (b), now § 44929.21(b).) In *Grimsley, supra,* 189 Cal.App.3d 1440, the court examined the legislative history of the 1983 amendments to the Education Code. It reasoned that the Legislature intended to provide "a separate procedure for the [reelection of] probationary teachers apart from the procedures governing midyear dismissals . . . ." (*Id.* at p. 1447.) The court concluded that "[t]he Legislature intended by the 1983 act to eliminate the requirement that the governing board's determination not to [reelect] a probationary teacher for the ensuing school year could be for cause only." (*Grimsley, supra,* 189 Cal.App.3d at pp. 1443-1444; cf. *Paramount Unified School Dist.* v. *Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371, 1378 [32 Cal.Rptr.2d 311]

[district's decision against reelection of probationary teacher does not entitle teacher to hearing or statement of reasons under section 44929.21(b)]; see also *McFarland Unified School Dist.* v. *Public Employment Relations Bd.* (1991) 228 Cal.App.3d 166, 169 [279 Cal.Rptr. 26] [final determination regarding reelection of probationary teachers lies within discretion of district and tenure can be denied for any lawful reason].)

In determining that a district's reelection decision may be made without cause, the *Grimsley* court recognized "the argument that unfairness may result to a probationary teacher who is notified of [a district's decision not to reelect him or her] for a second year or third year (prior to March 15 of the second year) without a statement of reasons and without any redress by way of administrative hearing or appeal to the board. This can have an adverse consequence to an aspiring teacher seeking employment with other school districts. However, this problem is a policy matter properly addressed to the Legislature. As we have explained, our task is to take the statutes as they read and to ascertain the legislative intent from the language used. This we have done." (189 Cal.App.3d at p. 1448.)

Thus, following the 1983 amendments to the Education Code, school districts with an average daily attendance of 250 students or more have been permitted by statute to choose not to reelect a probationary teacher for the ensuing school year without any showing of cause, without any statement of reasons, and without an administrative hearing or appeal, as long as the district gives notice to the teacher on or before March 15 of the employee's second year of employment. (§ 44929.21(b); *Grimsley, supra*, 189 Cal.App.3d at pp. 1447-1448.) If, on the other hand, the school district terminates a probationary employee because of a decline in pupil attendance, discontinuance of a service, or modification of curriculum, the school district must comply with procedures governing layoffs, including notice, hearing, and rights to reappointment if the work force is reinstated. (§§ 44949-44959.5; *Cousins, supra*, 24 Cal.App.4th at pp. 1852-1854.) Moreover, first and second year probationary employees may be dismissed during the school year for unsatisfactory performance (§ 44948.3, subd. (a)), or suspended for cause pursuant to section 44948.3, subdivision (b). These latter procedures require notice and a statement of reasons to the employee so affected. We are not faced, however, with interpreting the provisions pertaining to a layoff or midterm termination or suspension; the parties do not dispute that Gritts received timely notice of District's decision not to reelect him pursuant to section 44929.21(b).

(ii) *Government Code*

In 1975, the Legislature repealed the Winton Act (Stats. 1965, ch. 2041, § 2, p. 4660, repealed by Stats. 1975, ch. 961, § 1, p. 2247, formerly codified

at § 13080 et seq.), which had granted school district employees the right to organized representation on employment relations, and replaced it with the Education Employment Relations Act (also known as the Rodda Act) (Gov. Code, § 3540 et seq.) (the EERA). The EERA defines a more restrictive scope of bargaining, but provides for stronger bargaining powers than its predecessor. (*San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 860 [191 Cal.Rptr. 800, 663 P.2d 523] (*San Mateo*).) The purpose of the EERA is "to promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California by providing a uniform basis for recognizing the right of public school employees to join organizations of their own choice, to be represented by the organizations in their professional and employment relationships with public school employers, to select one employee organization as the exclusive representative of the employees in an appropriate unit, and to afford certificated employees a voice in the formulation of educational policy." (Gov. Code, § 3540.)

Pursuant to the EERA, employers "shall meet and negotiate with and only with representatives of employee organizations selected as exclusive representatives of appropriate units upon request with regard to matters within the scope of representation." (Gov. Code, § 3543.3.) The scope of this duty is limited to "matters relating to wages, hours of employment, and other terms and conditions of employment." (Gov. Code, § 3543.2, subd. (a).) The statute defines the phrase "terms and conditions of employment" to "mean health and welfare benefits . . . , leave, transfer and reassignment policies, safety conditions of employment, class size, procedures to be used for the evaluation of employees, . . . procedures for processing grievances pursuant" to specific Government Code sections relating to an agreement to submit to binding arbitration, and "*the layoff of probationary certificated school district employees, pursuant to Section 44959.5 of the Education Code* . . . ." (Gov. Code, § 3543.2 subd. (a), italics added.) As discussed, *ante,* at page 279, section 44959.5 governs the layoff of probationary teachers exclusively, and in contrast to a district's decision not to reelect probationary teachers, requires the laid-off employee to be given notice, a hearing, and the right to reappointment to the work force is reinstated. Government Code section 3543.2, subdivision (a) also expressly provides that all matters not specifically enumerated in the EERA are reserved to the public school employer and may not be a subject of meeting and negotiation. In addition, Government Code section 3540 further mandates that the provisions of the Government Code relating to collective bargaining agreements shall not supersede the Education Code. Causes and procedures for dismissal are not subject to negotiation. (Gov. Code, § 3543.2, subd. (b).) Against this background, we address the merits of the case.

### B. *Statutory Notice Requirements and Collective Bargaining*

Two Court of Appeal decisions explain the effect of the notice provision in section 44929.21(b) and, contrary to the present Court of Appeal, conclude that school districts have the absolute right to decide not to reelect probationary teachers without providing cause or other procedural protections to the terminated employees, and without regard to contrary provisions in a collective bargaining agreement. (*Fontana, supra,* 201 Cal.App.3d 1517; *Bellflower Education Assn.* v. *Bellflower Unified School Dist.* (1991) 228 Cal.App.3d 805 [279 Cal.Rptr. 179] (*Bellflower*).) As we explain, we agree with the result in these cases.

In *Fontana, supra,* 201 Cal.App.3d 1517, a probationary teacher received a notice of the district's decision not to reelect her for the following year pursuant to former section 44882, subdivision (b) (now section 44929.21(b)). She filed a grievance alleging that the school district had violated the collective bargaining agreement, which required just cause for employee discipline, and provided for the filing of grievances for any covered employee who had been " 'adversely affected by an alleged violation, misinterpretation or misapplication of [the agreement].' " (*Fontana, supra,* 201 Cal.App.3d at p. 1519.) On appeal from the denial of a motion to compel arbitration, the teachers association conceded that under *Grimsley, supra,* 189 Cal.App.3d at page 1450, the Education Code allowed the district to decline to reelect probationary teachers *without cause.* (*Fontana, supra,* 201 Cal.App.3d at p. 1524.) Nonetheless, the association asserted that the collective bargaining agreement gave probationary teachers a right not addressed by the *Grimsley* court: "the right not to be *disciplined* without just cause or progressive discipline—and that in certain factual situations a notice of [a district's decision against reelection] can be a disciplinary act." (*Fontana, supra,* 201 Cal.App.3d at p. 1524.) Thus, the association argued that an arbitrator should "determine whether a given notice of [the decision against reelection] is really a disciplinary act, and if the arbitrator determines [the decision not to reelect is] really discipline, then the arbitrator should be allowed to fashion some relief for the dismissed teacher . . . ." (*Ibid.*)

The Fontana School District asserted that the agreement could not cover its reelection decision because those issues were preempted by the Education Code. The *Fontana* Court of Appeal agreed with the district that its reelection decision was not arbitrable. The court equated the decision against reelection of probationary teachers with dismissal, relying primarily on Government Code section 3543.2. As discussed *ante,* at pages 279 through 280, that section delineates the topics that may be negotiated and memorialized in a collective bargaining agreement. Subdivision (b) of Government

Code section 3543.2 provides in part: "Notwithstanding Section 44944 of the Education Code [which governs dismissal or suspension of permanent employees for cause], the public school employer and the exclusive representative shall, upon request of either party, meet and negotiate regarding causes and procedures for disciplinary action, *other than dismissal,* including a suspension of pay for up to 15 days, affecting certificated employees." (Italics added.) The *Fontana* court concluded that because subdivision (b) of Government Code section 3543.2 applies to all *certificated employees,* including probationary teachers, and is not confined to permanent employees, the statute specifically excludes the topic of probationary employee reelection from inclusion in a collective bargaining agreement. Accordingly, that topic cannot be made subject to arbitration pursuant to a collective bargaining agreement, "even though the language of the subdivision indicates a legislative recognition that dismissal may be a form of disciplinary action." (*Fontana, supra,* 201 Cal.App.3d at p. 1525.)[1]

■ The Court of Appeal below opined that the *Fontana* court based its holding on the "faulty premise" that a district's decision against reelection was synonymous with dismissal of the employee. Although the Court of Appeal acknowledged that in *Fontana,* the parties agreed a decision against reelection and a dismissal amounted to termination of the employee, it concluded that fact should not mislead a court into accepting the *Fontana* court's conclusion that Government Code section 3543.2, subdivision (b), excludes the entire topic of dismissal (including a district's decision against reelection) from the scope of collective bargaining.[2]

---

[1]The present Court of Appeal concluded the *Fontana* court erred by relying on Government Code section 3543.2, subdivision (b), because the statute has no bearing on a district's decision not to reelect probationary employees. Rather, the court below reasoned, Government Code section 3543.2, subdivision (b), applies only to those actions governing *permanent* employees under Education Code section 44944. In rejecting a substantially similar argument, the *Fontana* court observed, "according to the clear language of subdivision (b), the employer and exclusive representative shall 'meet and negotiate regarding causes and procedures for disciplinary action, other than dismissal, . . . *affecting certificated employees.'* The language refers to '*certificated employees,*' not '*permanent certificated employees,*' and thus applies to *all* certificated employees, including probationary teachers." (*Fontana, supra,* 201 Cal.App.3d at p. 1525, original italics.) Thus, the *Fontana* court concluded that Government Code section 3543.2 specifically excludes dismissal of certificated employees from the scope of collective bargaining. (*Fontana, supra,* 201 Cal.App.3d at p. 1526.)

[2]The Court of Appeal below found it unnecessary to examine the *Fontana* court's conclusion that Government Code section 3543.2, subdivision (b), excluded the entire topic of dismissal from the collective bargaining process. The Court of Appeal assumed that in contrast to the parties in *Fontana,* both District and Association purportedly agreed below that a district's decision against reelection was not the equivalent of a dismissal. District disputes the existence of any such agreement. We conclude, however, that because we are interpreting the statutory scheme as a matter of law, any agreement between the parties as to the statutory interpretation is nonbinding and irrelevant. We therefore address the issue of the scope of

In addition, Association asserts that the Education Code distinguishes between the decision not to reelect a probationary employee at the end of the school year, and the decision to dismiss, and urges that such a distinction between the acts must be maintained. (Compare § 44929.21(b) [reelection of probationary teachers at end of school year] with § 44948.3 [midyear dismissal of probationary teachers] and §§ 44932-44947 [dismissal of permanent employees].)

Although we agree with the result in *Fontana, supra,* 201 Cal.App.3d at page 1525, we disagree with its analysis to the extent it held the case was directly governed by Government Code section 3543.2, subdivision (b), because the decision against reelection is tantamount to "dismissal." The notion that the term "dismissal" historically encompasses procedures for a decision against reelection is not supported by recent statutory changes. The post-1983 modifications to the Education Code specifically distinguish between a dismissal for cause (see, e.g., §§ 44932 et seq., 44941 et seq., 44948) and a decision against reelection pursuant to section 44929.21(b).

In addition, the primary purpose of Government Code section 3543.2, subdivision (b), is to provide that a collective bargaining agreement may, in certain limited respects, supersede the provisions of section 44944. Those provisions govern the conduct of a hearing initiated after the filing of written charges that may be the basis for dismissal or suspension, and do not directly govern the reelection of probationary employees.

 Nonetheless, even though we do not believe Government Code section 3543.2, subdivision (b), allows us to equate "dismissal" and "nonreelection," and we disapprove *Fontana, supra,* 201 Cal.App.3d 1517, to the extent it concluded the two terms were interchangeable, we do find Government Code section 3543.2, subdivision (a), evidences a general intent to exclude the procedures governing the reelection of probationary teachers as a proper subject of collective bargaining. As observed *ante,* at page 274, Government Code section 3543.2, subdivision (a), specifies that labor and management may supplement or depart from the Education Code in limited "matters relating to wages, hours of employment, and other terms and conditions of employment." Matters outside the scope of subdivision (a) are "reserved to the public school employer," may not be the subject of collective bargaining, and may not supersede other provisions of the Education Code. (Gov. Code, §§ 3543.2, subd. (a), 3540.)

Association argues that because Government Code section 3543.2 does not specifically exclude reelection procedures as a proper subject of collective bargaining, it remains a permissive subject on which valid and enforceable agreements may be reached voluntarily. (See, e.g., *Labor Board* v.

---

Government Code section 3543.2, subdivision (b), in conjunction with our discussion of the *Fontana* decision.

*Borg-Warner Corp.* (1958) 356 U.S. 342 [2 L.Ed.2d 823, 78 S.Ct. 718].) Although this argument may be persuasive in allowing for bargaining of subject matter not specifically enumerated in Government Code section 3543.2 in other contexts, such is not the case here. When we construe section 44929.21(b) in light of both the nonsupercession clause of Government Code section 3540 and its own predecessor statute, such preclusion must be inferred. In sum, when viewed in the context of the pre-1983 Education Code provisions that provided due process protections for probationary teachers, it is clear the Legislature intended, by its post-1983 amendments, to establish a reelection procedure in which notice, a hearing, and a statement of reasons were not required. Because the contract clause in this case was directly contrary to the procedures established by section 44929.21(b), it violated the nonsupercession clause of Government Code section 3540.

We find further support for our conclusion when we examine the statutory scheme of the Education Code. In contrast to permanent teachers entitled to procedural due process before termination (see e.g., §§ 44934, 44944), dismissal of probationary teachers may occur at the end of their second year with a simple notice of the district's decision. Undoubtedly, if the district entered into a collective bargaining agreement which stated, in effect, "Probationary employees will be entitled to the same due process rights as permanent employees," that agreement would be in direct conflict with the two-tiered system of the Education Code and would violate that nonsupercession clause of Government Code section 3540. If the district instead agreed to give probationary teachers only some of the due process rights given permanent teachers, as in this case, one effect would be to create a "quasi-permanent" employee status, in between permanent and probationary, that would conflict with the Education Code's statutory scheme.

Finally, the Court of Appeal in *Bellflower, supra,* 228 Cal.App.3d 805, agreed with the result in *Fontana, supra,* 201 Cal.App.3d 1517, and concluded that the Legislature vested exclusive discretion in the school district to determine the reelection procedures for probationary teachers under section 44929.21(b). In concluding that section 44929.21(b) allowed the district not to reelect a probationary teacher at the end of the school year without cause, the *Bellflower* court observed that the Government and Education Codes would preempt any terms of a collective bargaining agreement relating to a district's reelection procedures. (*Bellflower, supra,* 228 Cal.App.3d at p. 811.)

Thus, in section 44929.21(b), the Legislature has determined that the due process protection enjoyed by permanent certified employees should not apply to probationary employees, and that the state's interest in discharging

unsuitable teachers in the first two years of employment outweighs any due process rights sought by these teachers. The collective bargaining provisions in this case contravene this legislative scheme, and therefore violate Government Code section 3540's injunction that collective bargaining agreements in public schools not supersede provisions of the Education Code.

In rejecting the preemption analysis of both *Fontana* and *Bellflower,* the Court of Appeal below concluded that those cases were inconsistent with this court's decision in *San Mateo, supra,* 33 Cal.3d 850. There, we held that the scope of collective bargaining is not confined to the matters specifically enumerated in Government Code section 3543.2, because that section permits collective bargaining on matters "relating to" wages, hours, and other terms and conditions of employment. (*San Mateo, supra,* 33 Cal.3d at pp. 864-866.) At the same time, the *San Mateo* court noted that Government Code section 3540 mandates that its provisions shall not supersede other provisions in the Education Code. Thus, the *San Mateo* court concluded that the Education Code preempts collective bargaining agreements if the provisions of the code would be "'replaced, set aside or annulled'" by the agreement. (*San Mateo, supra,* 33 Cal.3d at pp. 864-866.)

Relying on the *San Mateo* court's discussion of the flexibility of the Government Code's collective bargaining provisions, the Court of Appeal below reasoned that because the Education Code does not expressly prohibit a negotiated agreement that gives greater protections to probationary employees than provided by statute, there is no direct conflict between article 19, section B(1) of the collective bargaining agreement and the Education Code. The Court of Appeal observed that the Education Code's only mandate in this regard is that a school district must give notice to the teacher by March 15 of its decision not to reelect. This statutory mandate, the Court of Appeal asserted, does not prohibit 30 days' advance notice as provided by the agreement. Thus, the Court of Appeal reasoned, there is nothing to prohibit the school district from agreeing to provide a statement of reasons for the decision against reelection insofar as the reason relates to incompetency to teach or misconduct. It concluded that by harmonizing the applicable provisions of the Education and Government Codes, a collectively negotiated contract may supplement the reelection procedure contained in section 44929.21(b), as did the provisions of article 19, section B(1) of the collective bargaining agreement.

In considering the "context of the statutory framework as a whole" (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155]), we conclude the statutes at issue here cannot be "harmonized" in the manner advocated by

Association or attempted by the Court of Appeal. Section 44929.21(b) is explicit in its terms of notice for a decision against reelection of probationary teachers after the second year of employment. Government Code section 3540 specifically states its provisions governing collective bargaining "shall not supersede other provisions of the Education Code." Thus, harmony is provided by the fact that the statutes are consistent on their face.

Moreover, in contrast to assertions made by Association and the Court of Appeal below, *San Mateo*, *supra*, 33 Cal.3d 850, observed that the intent of the Government Code is to *preclude* contractual agreements that would alter the meaning of other statutory provisions. As District observes, if we were to validate the requirements of article 19, section B(1) of the agreement with Association, we would severely undermine section 44929.21(b). Indeed, under *San Mateo*, *supra*, enforcement of article 19, section B(1), would result in replacing or setting aside a nonnegotiable and mandatory provision of the Education Code, a result the *Fontana* court explained Government Code section 3540 et seq. sought to avoid.

The Court of Appeal also attempted to distinguish *United Steelworkers of America* v. *Board of Education* (1984) 162 Cal.App.3d 823, 832 [209 Cal.Rptr. 16] (*United Steelworkers*). There, a school bus driver had been dismissed from his duties by the governing board of a school district. The teachers association sought to compel arbitration pursuant to the collective bargaining agreement. The *United Steelworkers* court affirmed the trial court's decision to deny the motion to compel arbitration after concluding that the provisions of the agreement delegating disciplinary decisions to an arbitrator conflicted with the mandatory provisions of section 45113 (making "conclusive" the determination of sufficiency of cause for disciplinary action by the school board against permanent classified employees). The conflict, the Court of Appeal reasoned, precluded arbitration.

The present Court of Appeal asserts that the reasoning of *United Steelworkers* does not apply to the present case, because there is nothing in the Education Code making a district's reelection decisions "conclusive." Nor, the Court of Appeal reasons, is there any language in the Education Code explicitly prohibiting a negotiated agreement that gives greater protection to probationary employees than provided by statute. The court analogizes this case to *Taylor* v. *Crane* (1979) 24 Cal.3d 442 [155 Cal.Rptr. 695, 595 P.2d 129] (hereafter *Taylor*), in which this court determined that because a city charter did not expressly prohibit an agreement to arbitrate the discipline or discharge of city employees, the exclusive power given to the city manager to discharge employees amounted to *initial* discretion in the city manager; the charter did not limit his authority to agree to subject his decisions to

arbitration. (*Taylor, supra,* 24 Cal.3d at pp. 450-453.) In sum, the Court of Appeal believed that, because there is no *specific* provision in section 44929.21(b) that the notice statute is "conclusive," and because section 44929.21(b) is less explicit than the charter provision in *Taylor,* there is no direct conflict between article 19, section B(1) and section 44929.21(b). Under this logic, the procedure for reelection of probationary teachers is therefore a proper subject of the collective bargaining agreement.

The Court of Appeal's analysis is misplaced. *United Steelworkers, supra,* 162 Cal.App.3d 823, relies on section 45113, a provision which makes *conclusive* the school board's determination of sufficiency of cause for disciplinary action against permanent classified employees. Section 45113 implies that a school board's disciplinary action is not appealable and does not address the sole discretion vested in the school board with respect to the decision to reelect a probationary teacher. As we have previously observed (*ante,* at pp. 283-284), it is clear that the intent of section 44929.21(b) was to vest *exclusive* discretion in the school district to decide whether or not to reelect probationary teachers, and the procedures set forth in article 19, section B(1), effectively supersede that discretion.

The present case is also factually distinguished from *Taylor, supra,* 24 Cal.3d 442. There, the court was interpreting a city charter provision. Here, by contrast, we review specific legislative acts which establish statewide procedures for the employment of public school teachers. As we have discussed, the Courts of Appeal in both *Fontana* and *Bellflower* explain the effect of this exclusive discretion and reach the correct result under the statutory scheme.

## CONCLUSION

When the Legislature vests exclusive discretion in a body to determine the scope of procedural protections to specific employees, the subject matter may not be the subject of either mandatory or permissive collective bargaining.

We conclude section 44929.21(b) preempts collective bargaining agreements as to causes and procedures governing the reelection of probationary teachers. The statutory scheme governing the proper subjects for collective bargaining (Gov. Code, § 3540 et seq.) and the reelection of probationary teachers (§ 44929.21(b)) makes it clear that a school district's decision not to reelect a probationary teacher after the second year of employment is vested exclusively in the district and may not be the subject of collective bargaining. Moreover, because the arbitrator's decision below is inconsistent with

District's statutory rights under the Education Code, the issue is subject to judicial review. (*Moncharsh*, *supra*, 3 Cal.4th at p. 32.) Accordingly, we reverse the Court of Appeal judgment.

Mosk, J., Kennard, J., Baxter, J., George, J., Werdegar, J., and Chin, J., concurred.