Filed 10/15/13  Sequoia Education v. Super. Ct. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SEQUOIA EDUCATION, INC., et al.,<br><br>        Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>        Respondent;<br><br>DAVID RIVERA et al.,<br><br>        Real Parties in Interest. | A134411<br><br>(Alameda County<br>Super. Ct. No. RG11597698) |

David Rivera and eight other plaintiffs commenced a putative class arbitration under an agreement subject to the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.). After the arbitrator rendered an award applying the FAA to find class arbitration unavailable, defendants Sequoia Education, Inc. and Corinthian Colleges filed a petition to confirm the award.  Concluding the arbitrator violated public policy by failing to apply California law in interpreting the arbitration agreement, the trial court vacated the award and ordered rehearing by the arbitrator.  We reverse and remand for confirmation of the award.

## I.  BACKGROUND

On September 29, 2011, defendants filed a petition to confirm an arbitration award (petition).  The petition alleged plaintiffs are former students of schools operated by defendant Sequoia Education, Inc. and its parent company, defendant Corinthian

Colleges, Inc. In enrolling in the schools, each plaintiff executed an arbitration agreement requiring "any dispute" to be "resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ('AAA') under its Commercial Rules." The provision does not mention class arbitration.

On May 28, 2008, plaintiffs commenced an arbitration challenging the quality of their educations, asserting their claims on behalf of a putative class. Pursuant to AAA rules, the arbitrator initially considered whether the arbitration clause permitted resolution of disputes by class arbitration. In a "Clause Construction Award" issued September 11, 2009, the arbitrator elected to apply California law in finding class arbitration to be available when an arbitration clause is silent.[1] Although he recognized the same issue under the FAA was before the United States Supreme Court, the arbitrator declined to stay the arbitration pending the court's decision.

Following the submission of periodic briefing by the parties over the next two years, the arbitrator reversed himself in an "Award on Motion to Reconsider Clause Construction Award," issued September 22, 2011. In this award, the arbitrator concluded that the Supreme Court's intervening decisions in *Stolt-Nielsen S.A. v. AnimalFeeeds International Corp.* (2010) 559 U.S. 662 [130 S.Ct. 1758] (*Stolt-Nielsen*) and *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740] (*Concepcion*) compelled the conclusion "where an arbitration agreement that is subject to the Federal Arbitration Act does not explicitly contain language permitting class arbitration, class arbitration is not permitted. This is so even if applicable state law would dictate otherwise." The petition sought confirmation of this award.

In opposition to the petition, plaintiffs argued the arbitrator's award should be vacated because it was "contrary to California statutory and public policy." They

---

[1] While it was expressly subject to the FAA, the arbitration provision did not require the application of any particular state's substantive law, stating only that "[t]he arbitrator's decision shall be set forth in writing and shall set forth the essential findings and conclusions upon which the decision is based. Any remedy available from a court under the law shall be available in the arbitration."

2

contended that, in addition to violating various doctrines of contract interpretation, the decision violated the "public policy of California courts to refusal [*sic*] enforcement of adhesion provisions not within the reasonable expectations of the weaker or adhering party" and "California public policy encouraging 'the use of the class action device.' "

In a written order, the trial court denied the petition, vacated the award, and directed rehearing by the arbitrator. Applying the purported principle that an arbitrator exceeds his or her authority when the award " 'violates a statutory right or otherwise violates a well-defined public policy,' " the court found the arbitrator "violated the well-defined public policy that the agreement was to be interpreted under California law." The court also found the arbitrator violated the "well-defined public policy that under California law the arbitrator must interpret the agreement to give effect to the intentions of the parties." The court directed a "rehearing by the arbitrator" in which the arbitrator was directed to apply "California law of contract interpretation to determine whether the parties intended to include or exclude class arbitration." No judgment has been entered.

## II. DISCUSSION

Defendants contend the trial court erred in refusing to confirm the arbitrator's award. We review de novo a trial court's decision confirming or vacating an arbitration award. (*California Statewide Law Enforcement Assn. v. Department of Personnel Administration* (2011) 192 Cal.App.4th 1, 13.)

### A. *Appealability*

Plaintiffs have moved to dismiss the appeal, correctly arguing an order vacating an arbitration award is appealable only if no rehearing is ordered. (Code Civ. Proc., § 1294, subd. (c); *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 3.) We deny the motion because we find "unusual circumstances" that persuade us to exercise our discretion to treat the improper appeal as a petition for a writ of mandate. (*Olson v. Cory* (1983) 35 Cal.3d 390, 401.) The arbitrator's award was a preliminary legal ruling, rather than a ruling on the merits of the dispute rendered after an evidentiary hearing. In vacating the award and directing a rehearing, the trial court was, in effect, ordering the arbitrator to adopt a different legal rule. If, upon rehearing, the arbitrator acceded to the

3

trial court's instructions, this issue will be presented to us following entry of judgment on an additional petition to confirm or vacate. On the other hand, if the arbitrator declined to follow the court's instructions, the parties could be caught in an endless round of petitions and orders for rehearing, without producing an appealable judgment. Either way, there is nothing to be gained in requiring the parties to take these additional procedural steps before allowing appellate review of the trial court's order.

**B. *The Trial Court's Ruling***

Before addressing the trial court's order, we provide a brief legal background for its ruling. The United States Supreme Court has, in the past three years, rendered two significant decisions addressing the availability of class arbitration. In the first, *Stolt-Nielsen*, the court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." (*Stolt-Nielsen, supra*, 559 U.S. 662, 684.) The decision accordingly reversed an order of class arbitration because the parties "concurred that they had reached 'no agreement' on that issue." (*Ibid.*) The second, *Concepcion,* overruled as preempted by the FAA a California Supreme Court doctrine holding unconscionable any provision barring class arbitration in a contract of adhesion. (*Concepcion, supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1750].) As the latter holding suggests, the United States Supreme Court's approach to certain aspects of arbitration law has been at odds with that of our own Supreme Court. (See, e.g., *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1131.)

With that background, we examine the trial court's decision to vacate the arbitrator's award. Coincidentally, the United States Supreme Court rendered a decision under the FAA in its just-concluded term, *Oxford Health Plans LLC v. Sutter* (2013) ___ U.S. ___ [133 S.Ct. 2064] (*Oxford*), that is materially indistinguishable from the present dispute. Prior to the decision in *Stolt-Nielsen*, the parties in *Oxford* submitted to their arbitrator the issue of the availability of class arbitration under their contract. (133 S.Ct. at p. 2067.) Interpreting the clause in a written decision, the arbitrator found class arbitration available, although the arbitration clause made no express reference to class

4

arbitration. When asked to reconsider his decision after *Stolt-Nielsen*, the arbitrator reaffirmed his original reasoning. (*Oxford*, at pp. 2067–2068.) Reviewing an unsuccessful petition to vacate based on the argument the award was directly contrary to *Stolt-Nielsen*, the Supreme Court held any legal error immune from judicial review. The court explained, "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.' [Citation.] That limited judicial review, we have explained, 'maintain[s] arbitration's essential virtue of resolving disputes straightaway.' [Citation.] If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.' [Citation.] [¶] . . . 'It is not enough . . . to show that the [arbitrator] committed an error— or even a serious error.' [Citation.] Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits. [Citations.] . . . So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." (*Oxford*, at p. 2068, fn. omitted.) Because the arbitrator quite clearly made a good faith effort to interpret the parties' contract, the court held, it did not matter whether he "misconstrued" it. That issue was "not properly addressed to a court," since " '[i]t is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.' [Citation.] The arbitrator's construction holds, however good, bad, or ugly." (*Id.* at pp. 2070–2071.)

Because the parties' arbitration clause is governed by the FAA, *Oxford* is arguably controlling. As in *Oxford,* the parties here submitted to the arbitrator the issue of the availability of class arbitration under the arbitration clause in their agreement. In a thoughtful written award, the arbitrator interpreted the contract and found class

arbitration unavailable.[2] Because "the arbitrator . . . interpreted the parties' contract," the trial court was required to confirm the award, without asking "whether he got its meaning right or wrong." (*Oxford, supra,* ___ U.S. at p. ___ [133 S.Ct. at p. 2068, fn. omitted].) Instead, the trial court reviewed the merits of the arbitrator's legal reasoning, found it wanting, and entered an order essentially directing the arbitrator to adopt a different view. This far exceeded the proper scope of judicial review. As the Supreme Court noted in *Oxford*, "[t]he arbitrator's construction holds, however good, bad, or ugly." (*Id.* at pp. 2070–2071.)

We need not decide whether the trial court should have been guided by *Oxford* or by California law in reviewing the arbitrator's award because both lead to the same conclusion. Under California law, "[a]n arbitration award is final and conclusive because the parties—as here—'have agreed that it be so.' [Citation.] Only limited judicial review is available; courts may not review the merits of the controversy, the validity of the arbitrator's reasoning, or the sufficiency of the evidence supporting the award. [Citation.] Thus, with 'narrow exceptions,' an arbitrator's decision is not reviewable for errors of fact or law. [Citation.] This is so even if the error appears on the face of the award and causes substantial injustice." (*Shahinian v. Cedars-Sinai Medical Center* (2011) 194 Cal.App.4th 987, 999–1000; see similarly *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 380.) This restricted scope of review is reflected in the Code of Civil Procedure, which permits a trial court to vacate an arbitrator's award only on specific grounds: fraud, corruption, or misconduct by the arbitrator, serious procedural

---

[2] At oral argument, plaintiffs' counsel contended repeatedly that the arbitrator had not interpreted the contract. The record convincingly refutes the contention. The arbitrator issued a five-page decision that skillfully applies the governing legal authority to the language of the parties' contract to determine the availability of class arbitration. That is the very definition of "contract interpretation." Plaintiffs' counsel appears to have meant merely that the arbitrator did not interpret the contract in the manner plaintiffs believe it should have been interpreted. As the court indicated in *Oxford,* the manner in which an arbitrator interprets a contract is immaterial, so long as the arbitrator undertook some form of interpretation. (*Oxford, supra,* ___ U.S. at p. ___ [133 S.Ct. at pp. 2070–2071].) That unquestionably occurred here.

unfairness, or a decision in excess of the arbitrator's power. (Code Civ. Proc., § 1286.2, subd. (a).)

The trial court purported to find that the arbitrator exceeded his powers because he violated "public policy," a ground derived from our Supreme Court's decision in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 (*Moncharsh*).) In that decision, the court considered the appellant's argument that the arbitration award should be vacated because a provision of the parties' contract was contrary to attorney ethical rules. The court rejected the argument, explaining, "[Two prior decisions] permitted judicial review of an arbitrator's ruling where a party claimed the entire contract or transaction was illegal. By contrast, Moncharsh challenges but a single provision of the overall employment contract. Accordingly, neither [prior decision] authorizes judicial review of his claim. [¶] We recognize that there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision when a party claims illegality affects only a portion of the underlying contract. Such cases would include those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights. [Citation.] [¶] Without an explicit legislative expression of public policy, however, courts should be reluctant to invalidate an arbitrator's award on this ground. The reason is clear: the Legislature has already expressed its strong support for private arbitration and the finality of arbitral awards in title 9 of the Code of Civil Procedure. [Citation.] Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Id.* at p. 32, fn. omitted.)

As the above quotation suggests, *Moncharsh* did not create a general exception to the limited scope of judicial review of arbitration awards when the award is claimed to violate public policy. Instead, the court's pronouncement related only to the claim that an arbitrator's award should be reversed because the provision of the contract enforced by the award was illegal. Even in those circumstances, the court held, the award should be enforced "[a]bsent a clear expression of illegality or public policy." (*Moncharsh, supra,* 3 Cal.4th at p. 32.) Although subsequent Supreme Court decisions have expanded the

7

scope of this exception somewhat, holding an arbitration award can be vacated if "granting finality to an award would be inconsistent with a party's *statutory rights*" (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 276), none has acknowledged a general public policy exception. Plaintiffs made no claim of contractual illegality, nor did they contend the arbitrator's award violated a specific statutory right.

Yet even if there were some general public policy exception,[3] it would not encompass the trial court's approach: to engage in independent judicial review, identify the rules of contract interpretation purportedly violated by the arbitrator's award, and label those rules "public policy" to justify imposition of the court's interpretation on the arbitrator. To enshrine ordinary rules of contract interpretation as "public policy" adequate to justify the refusal to enforce an otherwise valid arbitration award would entirely undo the restraints placed on judicial review of arbitration awards.

---

[3] There are Court of Appeal decisions suggesting, in dictum, that an arbitration award violating a " 'well-defined public policy' " is invalid. (E.g., *California Statewide Law Enforcement Assn. v. Department of Personnel Administration* (2011) 192 Cal.App.4th 1, 13.) These uniformly cite authority other than the decisions of our Supreme Court, which has never approved such a rule. In any event, whatever their statements in dictum, none of these Court of Appeal decisions would have sanctioned the trial court's conduct here.

## III.  DISPOSITION

The order of the trial court is vacated.  The matter is remanded to the trial court for entry of a judgment confirming the arbitration award.


_____
Margulies, Acting P.J.


We concur:


_____
Dondero, J.


_____
Banke, J.