Filed 12/14/21 (unmodified opn. attached)

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION SIX

| | |
|---|---|
| CITY OF OXNARD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF VENTURA et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B312348<br>(Super. Ct. No. 56-2021-00552428-CU-WM-VTA)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on November 23, 2021, be modified as follows:

1. On page 3, the last sentence of the first paragraph is deleted and replaced with:

> Each plan has indicated that VCEMSA is County's exclusive EMS agency.

> There is no change in judgment.
> Appellant's petition for rehearing is denied.

_____

GILBERT, P. J.          YEGAN, J.          TANGEMAN, J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CITY OF OXNARD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF VENTURA et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B312348<br>(Super. Ct. No. 56-2021-<br>00552428-CU-WM-VTA)<br>(Ventura County) |

As our Supreme Court has made clear, when a city delegates the administration of ambulance services to the surrounding county, which then assumes control, the city may not later attempt to resume administration of those services. (*Valley Medical Transport, Inc. v. Apple Valley Fire Protection Dist.* (1998) 17 Cal.4th 747, 761-762 (*Valley Medical*).)  Here, we conclude that the trial court properly applied this holding when it denied a motion for a preliminary injunction sought by the City of Oxnard (City) to prohibit the County of Ventura (County) and Ventura County Emergency Medical Services Agency (VCEMSA) from contracting for ambulance services within City limits.  City contends the court erred when it concluded that:  (1) City did not have the authority to contract for ambulance services, (2) City

would not suffer irreparable injury in the absence of an injunction, and (3) denying the injunction would best serve the public interest.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

In 1971, County, City, and several other municipalities entered into a joint powers agreement (JPA) regarding ambulance services.  Pursuant to the agreement, County:  (1) administers (and pays for) a countywide ambulance system, and (2) is the only party authorized to contract with ambulance service providers on behalf of the other JPA signatories.  To implement the JPA, County established seven exclusive operating areas (EOAs) in which private companies provide ambulance services.  City is located in EOA6, where Gold Coast Ambulance (GCA) is the service provider.

The JPA has no definite term.  It permits parties to withdraw from it by providing written notice at least 180 days prior to the end of the fiscal year.  Withdrawal becomes effective at the beginning of the next fiscal year.

In 1980, the Legislature enacted legislation to establish statewide policies for the provision of emergency medical services (EMS) in California.  (See Health and Saf. Code,[1] § 1797.200 et seq.)  The EMS Act grants counties the authority to designate a local EMS agency to administer services countywide.  (*Ibid*.)  The EMS Act also includes a "transitional" provision that allows cities that were providing EMS services on June 1, 1980, to continue to do so until they cede the provision of services to the local agency.  (§ 1797.201.)

_____

[1] Unlabeled statutory references are to the Health and Safety Code.

2

Pursuant to the EMS Act, County established VCEMSA as the local EMS agency. For more than 40 years, VCEMSA has administered the countywide EMS program, contracted with EMS providers, and submitted EMS plans for state approval. Each plan has indicated that VCEMSA is County's exclusive EMS provider.

In the 2010s, City officials grew dissatisfied with GCA's provision of ambulance services. City officials determined that residents in low- and moderate-income areas were twice as likely to experience delayed ambulance responses than residents in more affluent areas. Officials also determined that GCA spent more than 12 percent of its time outside of EOA6. While outside EOA6, GCA's "floater" ambulances responded to calls in more-affluent areas nearly twice as often as they responded to calls in less-affluent areas.

In December 2020, City notified County of its intent to withdraw from the JPA so it could begin administering its own ambulance services effective July 1, 2021. City requested that County not approve a contract extension with GCA so it could instead contract with another ambulance services provider. County officials rejected this request and approved the GCA contract extension.

City moved for a preliminary injunction to prevent County from providing ambulance services within City limits after June 30, 2021, claiming it retained authority under the EMS Act to provide such services because it was indirectly contracting for those services through the JPA. The trial court disagreed and denied City's motion.

DISCUSSION

City contends the trial court erred when it concluded that City lacks the authority to contract for its own ambulance services under the EMS Act. We conclude otherwise.

"'In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of [their] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction. [Citations.]' [Citation.]" (*Law School Admission Council, Inc. v. State of California* (2014) 222 Cal.App.4th 1265, 1280.) On appeal, our review is "limited to whether the . . . court abused its discretion in evaluating [these] factors." (*Ibid.*) But "questions underlying the preliminary injunction are reviewed under the appropriate standard of review." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1136.) Thus, to the extent a party's "'likelihood of prevailing on the merits depends upon a question of pure law"— e.g., where it hinges on a question of statutory construction—we exercise our independent review. (*Law School*, at pp. 1280-1281.)

There was no abuse of discretion here. "[T]he EMS Act aims to achieve integration and coordination among various government agencies and EMS providers." (*County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 925 (*County of San Bernardino*).) To this end, the Legislature "contemplated that . . . cities . . . would eventually be integrated into local EMS agencies" (*ibid.*): "Upon the request of a city . . . that contracted for or provided, as of June 1, 1980, prehospital [EMS], a county shall enter into a written agreement with the city . . . regarding the provision of prehospital [EMS] for that

4

city" (§ 1797.201). "Until such time that an agreement is reached, prehospital [EMS] shall be continued at not less than the existing level, and the administration of prehospital EMS by cities . . . presently providing such services shall be retained by those cities." (*Ibid.*)

One of the purposes of section 1797.201 is to "allow [cities] to protect the investments they [have] already made in various assets—emergency medical equipment, infrastructure, personnel, etc." (*County of San Bernardino*, *supra*, 15 Cal.4th at pp. 929-930.) The section "is not 'a broad recognition or authorization of autonomy in the administration of [EMS] for cities,'" but is instead a "grandfathering of existing [EMS] operations until such time as these services are integrated into the larger EMS system." (*Valley Medical*, *supra*, 17 Cal.4th at p. 758.) It permits cities to continue to provide *only* those emergency services they provided on June 1, 1980, and permits them to exercise *only* "the administrative control [that] they had already exercised as of" that date. (*County of San Bernardino*, at p. 929.)

If a city did not provide or exercise administrative control over a specific type of EMS operations (such as ambulance services) on June 1, 1980, it cannot later seek to provide or administratively control that service. (*County of San Bernardino*, *supra*, 15 Cal.4th at p. 929; see also *Valley Medical*, *supra*, 17 Cal.4th at p. 758 [§ 1797.201 permits "cities . . . to *continue* to do what they had been doing as of June 1, 1980, and not to resume what they ceased to do"].) This is true even if the city retains some sort of "concurrent jurisdiction with the county" over a service: Despite its retention of that jurisdiction, the city "may

5

not expand its control by excluding the county provider" of the service at issue.  (*County of San Bernardino*, at pp. 933-934.)

*County of San Bernardino*, *supra*, 15 Cal.4th 909 and *Valley Medical*, *supra*, 17 Cal.4th 747 resolve the central issue presented in this case:  Whether a city that "cease[d] to provide" ambulance services and instead "permit[ted] those services to be provided or administered by the local EMS agency . . . may [now] unilaterally resume administration of [the] services."  (*Valley Medical*, at p. 758.)  The answer is no.  (*Ibid*.)  City thus cannot show a likelihood of prevailing on the merits of its claim.  The trial court's denial of its motion for a preliminary injunction was therefore proper.

City's attempts to distinguish this case from *County of San Bernardino*, *supra*, 15 Cal.4th 909 and *Valley Medical*, *supra*, 17 Cal.4th 747 fail.  City contends it meets the criteria for section 1797.201 grandfathering because it contracted for ambulance services on June 1, 1980, as one of the signatories to the JPA.  But on that date the JPA empowered County, not City, to contract for and administer ambulance services.  This fact is fatal to City's contention.

City complains that this conclusion requires inserting the word "directly" into section 1797.201 (i.e., only cities that *directly* contracted for or provided ambulance services on June 1, 1980, could later provide such services), which contravenes established rules of statutory interpretation.  (See Code Civ. Proc., § 1858 [when construing statutes, court should "not . . . insert what has been omitted"].)  But as the trial court explained, interpreting section 1797.201 to permit cities that indirectly contracted for ambulance services in 1980 to later resume direct contracting for those services "would render section 1797.201's

6

exemption language meaningless, because [such] cities . . . most certainly must have agreed (by contract, resolution[,] or ordinance) that other entities would contract for those services on their behalf." (See, e.g., *Reno v. Baird* (1998) 18 Cal.4th 640, 658 [courts "'should avoid a construction making any word surplusage'"].) It would also contravene the Supreme Court's directive to read section 1797.201's exemption language "in a fairly narrow fashion." (*County of San Bernardino, supra*, 15 Cal.4th at p. 931.) And it would do nothing to further section 1797.201's purpose of protecting investments already made in ambulance operations (see *County of San Bernardino*, at pp. 929-930), investments City does not claim are part of its emergency services asset portfolio.

City next claims that the trial court's construction of section 1797.201 violates the prohibition against contracting away police powers. (See *108 Holdings, Ltd. v. City of Rohnert Park* (2006) 136 Cal.App.4th 186, 194.) Even if we assume that the provision of ambulance services is a police power (see *Sievert v. City of National City* (1976) 60 Cal.App.3d 234, 236), the exercise of that power is subject to constitutional constraints. As relevant here, a city has the power to "make and enforce" only those "ordinances and regulations [that are] not in conflict with general laws." (Cal. Const., Art. XI, § 7.) The EMS Act is a general law. (*Keenan v. San Francisco Unified School Dist.* (1950) 34 Cal.2d 708, 713 ["general law" is one that "'relates to and acts uniformly upon the whole of any single class of individuals or objects'"].) City's authority to provide and administer ambulance services is thus subject to the limits set forth in the EMS Act.

Finally, City claims that because County's authority to contract for and provide ambulance services within City limits arises from the JPA, the trial court erred when it concluded that City could not exclude County after City withdrew from the JPA. But since June 1, 1980, County's authority to provide ambulance services in City limits has not come from the JPA; it has come from the EMS Act. (*County of San Bernardino*, *supra*, 15 Cal.4th at p. 929.) And under the Act, a city "may not expand its control by excluding the county provider" of ambulance services. (*County of San Bernardino*, at pp. 933-934.) The Act permits a city only to "*continue* to do what [it] had been doing as of June 1, 1980," not "resume what [it had] ceased to do." (*Valley Medical*, *supra*, 17 Cal.4th at p. 758.)

Here, City ceased contracting for, providing, and administering ambulance services when it signed the JPA in 1971. Regardless of whether it withdraws from the JPA, it may not now resume providing those services absent County's consent. (*County of San Bernardino*, *supra*, 15 Cal.4th at p. 934; see also *Valley Medical*, *supra*, 17 Cal.4th at p. 760 ["section 1797.201 does not provide for a right of resumption"].) Any contrary conclusion would be inconsistent with "the EMS Act's goal of integration."[2] (*Valley Medical*, at p. 760.)

---

[2] Given our conclusion, we do not consider the parties' remaining contentions. We also deny the requests for judicial notice filed by the California Fire Chiefs Association, Inc., and the League of California Cities, as amici curiae, because they are not relevant to our decision. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 295, fn. 21.)

## DISPOSITION

The trial court's order denying City's motion for a preliminary injunction, entered April 30, 2021, is affirmed. County and VCEMSA shall recover their costs on appeal.

CERTIFIED FOR PUBLICATION.

TANGEMAN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

9

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____

Wright, L'Estrange & Ergastolo, Joseph T. Ergastolo, Andrew E. Schouten and Davin H. Kono for Plaintiff and Appellant.

Mastagni Holstedt, Kathleen N. Mastagni Storm and Dylan C. Marques for California Professional Firefighters as Amicus Curiae on behalf of Plaintiff and Appellant.

Johnston Thomas and William L. Adams for California Fire Chiefs Association, Inc. as Amicus Curiae on behalf of Plaintiff and Appellant.

Meyers Nave and Laura N. McKinney for League of California Cities as Amicus Curiae on behalf of Plaintiff and Appellant.

Hooper, Lundy & Bookman, Lloyd A. Bookman, Jordan Kearney, Erin Sclar; Tiffany N. North, County Counsel, Lisa Canale, Assistant County Counsel, for Defendants and Respondents.

Elbert W. Muncy, Jr. for California Ambulance Association as Amicus Curiae on behalf of Defendants and Respondents.