[Civ. No. 19953. Second Dist., Div. One. Oct. 19, 1954.]

RKO RADIO PICTURES, INC. (a Corporation), Respondent, v. PAUL JARRICO, Appellant.

Edward Mosk for Appellant.

Mitchell, Silberberg & Knupp and Arthur Groman for Respondent.

DORAN, J.—This is an appeal from the judgment in an action for declaratory relief.

■ The action herein results from a controversy as to the rights of the parties according to the terms of an agreement between appellant and respondent. As recited in respondent's brief, "In 1951 respondent entered into a written contract with defendant-appellant (hereinafter referred to as appellant), Paul Jarrico, a motion picture screen writer, whereby it hired appellant to prepare a screen play for a motion picture property which it owned entitled 'The Las Vegas Story.'

"The written contract between appellant and respondent recited in part that an essential consideration of the contract was the popularity and good reputation of appellant with the public. Further, appellant agreed that during the production and distribution of the motion picture he would conduct himself with due regard to public conventions and morals and would not do anything which would tend to degrade him or bring him into public disgrace, obloquy, ill will or ridicule.

"The contract also provided that, on condition that appellant performed all the covenants and conditions imposed upon him, he would receive certain credit for screen authorship as determined by what was called the Basic Agreement between respondent and the Screen Writers Guild, a union of screen writers.

"Thereafter, appellant was subpoenaed to appear before the House Committee on Un-American Activities. While he was in attendance at a hearing of the Committee, but before he himself took the witness stand, a longtime associate of his named appellant as a Communist and an active member of the Communist Party. The associate further stated, among other things, that he had asked appellant to assure him that, in the event of a war between Russia and the United States, appellant would do nothing to help Russia, but appellant refused such assurance.

"Appellant was then called to the witness stand. He failed to deny the charges made against him, and refused to answer questions as to whether or not he was a member of the Communist Party on the ground that his answer might tend to incriminate him.

"The testimony, both of the witness against the appellant and of the appellant himself, was widely disseminated throughout the United States in newspapers, magazines, and by radio broadcasts.

"Respondent concluded appellant's conduct constituted a breach of his written agreement with it, and refused him screen credit.

"To secure a judicial determination of its rights respondent filed an action for declaratory relief against the appellant, requesting the Court to determine whether or not appellant had breached his written agreement. After a trial without a jury, the court below found that appellant had become an object of public disgrace and ill will. It held that he had breached his contract, and that the respondent was discharged from any liability or obligation to give appellant screen credit.

"Appellant does not deny the terms of the written contract nor its execution by him. He does not question the finding of the trial court that his conduct rendered him an object of public disgrace and ill will. Indeed, appellant has raised no questions of fact whatsoever, and he appears before this court solely on the Clerk's Transcript on the basis of alleged questions of law."

Appellant's position is that "The basic questions which must be determined by this court on appeal are four:

"1. May an individual member of a collective bargaining unit accept terms by individual contract with the employer which are in derogation of and are less than the minimum rights guaranteed in the industry wide collective bargaining agreement?

"2. May a party who agrees to an arbitration clause in a collective bargaining agreement, thereafter ignore the award made in accordance with the agreement?

"3. If the court answers the preceding two questions in the affirmative, then the issue arises as to whether the acts of the Appellant in exercising his constitutional rights were a violation of the 'morals clause' in the individual contract.

"4. If the court finds that the answer to question three is in the affirmative, then the court must determine whether such an

agreement was contrary to public policy and therefore void."

In this connection appellant argues that:

"A. The Individual Contract Between Employer and Employee May Not Waive Any Benefits Granted to the Employee Under the Collective Bargaining Agreement.

"1. The Contract Establishes That Credits Are Exclusively the Province of the Screen Writers Guild."

"B. The Award of the Screen Writers Guild Arbitration Committee Was Final and Binding on RKO."

"C. The Appellant Did Not Act In Violation of Good Morals Within the Meaning of the Contract.

"1. The Assertion of Constitutional Right Cannot Be In Violation of Public Conventions and Morals."

"D. The Action of the Respondent in Depriving the Appellant of Credit Was A Violation of Federal Law and Illegal."

"E. A Contract Requiring the Waiver of A Constitutional Privilege is Void as Against Public Policy, and the Construction of a Contract Leading to This Conclusion Must be Avoided."

"F. Respondent's Interpretation of the 'Morals Clause' Would Make the Contract Illusory insofar as the Grant of Credits to the Writer is Concerned."

The court found, as recited in the comprehensive findings, "That it is true that by entering into the said written instrument of January 17, 1951, the defendant, expressly and impliedly, in fact and in law, promised and agreed to act with relation to his employment by the plaintiff in good faith and not to do anything of any nature which might injure or prejudice the plaintiff in connection with its utilization of the defendant's services. By his conduct and statements aforesaid, the defendant in material respects breached the conditions and covenants of good faith by which he was expressly and impliedly bound by the said written instrument of January 17, 1951, and by his conduct has released the plaintiff from any and all obligations to the defendant arising by and under the said written instrument."

Appellant's contentions cannot be upheld as to the facts as well as the law. The trial judge's findings are abundantly supported by the evidence and the law applicable thereto is elementary and without conflict. It should be noted at the outset that the Screen Writers Guild is not a party to the action. Appellant's argument with relation to the so-called "Basic Agreement" and the guild is beside the issue. The

controlling agreement, in the circumstances, is the one between the respondent and appellant regardless of the provisions of the "Basic Agreement." Obviously the guild is without power to prevent that freedom of contract guaranteed by the Constitution. The contract between appellant and respondent referred to in paragraph IV of the trial court's findings and the one referred to as of January 17, 1951, is the controlling agreement between the parties. The evidence, as noted above, abundantly supports the trial court's conclusion that appellant violated this agreement. There are no errors in the record and the judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied November 9, 1954, and appellant's petition for a hearing by the Supreme Court was denied December 15, 1954. Carter, J., was of the opinion that the petition should be granted.