[Civ. No. 56520. Second Dist., Div. Two. Sept. 17, 1979.]

THAT WAY PRODUCTION COMPANY, Plaintiff and Appellant, v. DIRECTORS GUILD OF AMERICA, INC., et al., Defendants and Respondents.

## COUNSEL

Rogers & Harris and Michael Harris for Plaintiff and Appellant.

Elliott Williams for Defendants and Respondents.

## OPINION

**COMPTON, J.**—Appeal from a judgment of the superior court denying a petition to vacate an arbitration award under a collective bargaining agreement. We affirm.

That Way Production Company, a corporation (Producer) produces feature length theatrical films. Edward Montagne is a film director and a member of the Directors Guild of America, Inc. (Guild), a collective bargaining representative of directors in the motion picture industry.

Producer and the Guild were signatories to a collective bargaining agreement, hereinafter referred to as the Basic Agreement, which established inter alia, the minimum rates of compensation for directors. As is usual for such agreements, it contained a provision for arbitration to resolve disputes arising under the Basic Agreement.

It is the practice in the industry for directors to negotiate with producers for individual contracts on a production-by-production basis. In these negotiations the director is generally represented by a talent agent. The Basic Agreement specifically provides that the arbitrator shall not have the power to "vary, alter, modify or amend" the terms of a personal service contract between an individual director and a producer.

The foregoing described relationship thus differs markedly from the usual labor-management relation where employees of a particular trade

or skill bargain as a group and are paid the same wage for the same type of work. Here the Basic Agreement sets forth minimum rates and the individual members bargain for their own particular talent.

The relationship between Montagne and the Producer developed against this background. Montagne, through his agent, contracted to direct a film for Producer for a compensation of $4,500 per week over a 10-week period.

■ The instant dispute arose over a clause in the contract which gave Producer the right to terminate Montagne's services, without cause, after three weeks—two weeks preproduction and one week of photography—upon payment of $20,000 for the three weeks services. This clause admittedly contravened the Basic Agreement which appears to specify the minimum period of employment as 13 weeks, although the arbitrator specifically found that neither party was aware of that fact at the time of executing the individual contract and that all parties proceeded and performed under the contract in good faith.

When the Producer invoked its power of termination, Montagne and the Guild instituted arbitration proceedings under the Basic Agreement. The arbitrator ordered Producer to pay Montagne the full $45,000 compensation.

The arbitrator took note of the above referenced provision prohibiting alterations of the individual contract as well as the provisions in the Basic Agreement prohibiting waiver of the minimum terms of the Basic Agreement. The arbitrator resolved this apparent conflict by declaring that the individual contract was susceptible of a construction which would call for $4,500 as a weekly rate, which if applied to the minimum number of weeks required by the Basic Agreement, could result in a claim of more than $45,000. In recognition of the inadvertent nature of the breach and the good faith of the parties, the arbitrator limited the award to $45,000.

Producer's argument, which certainly appeals to fundamental notions of fairness, is that Montagne, a sophisticated and knowledgeable individual represented by an equally sophisticated agent, voluntarily entered into the contract with his "eyes wide open," and should not be permitted to enjoy a windfall for services not performed.

As appealing as that argument is in the context of Montagne, vis-à-vis the Producer, it must yield to legal principles which transcend this individual case and which are designed to serve broader social and economic interests.

Aside from the equities of the situation, Producer cites us to the case of *RKO Radio Pictures, Inc.* v. *Jarrico,* 128 Cal.App.2d 172 [274 P.2d 928], as standing for the proposition that the Basic Agreement cannot act to prevent the individuals from exercising their freedom of contract.

Coupling that rule of law, which it constructs out of *Jarrico,* with the holding in *Abbott* v. *California State Auto. Assn.,* 68 Cal.App.3d 763 [137 Cal.Rptr. 580], that an arbitration award may, under certain circumstances, be vacated because of an error in law on the part of the arbitrator, Producer argues that the award here not only can, but must be vacated.

*RKO Radio Pictures, Inc.* v. *Jarrico, supra,* involved a screen writer who had received widespread unfavorable publicity concerning his affiliation with the Communist Party and who had failed to refute charges of disloyalty to the United States. *RKO,* the producer in that case, refused to give him writing credit for a screen play he had authored. This refusal was based on an alleged breach of a clause in his contract requiring him to comport himself in a manner so as not to bring himself into public disrepute.

The above mentioned clause provided that if Jarrico performed the covenant as to his conduct, he would be given credit according to the provisions of the basic collective bargaining agreement between the producer and the Screen Writers Guild. The opinion in *Jarrico* does not describe the provisions of the Basic Agreement dealing with writing credits. We can only assume from the reference in the individual contract that they delineated the formula and the requirements for writing credits according to the nature and type of writing services performed. Significantly, there is nothing in the opinion to indicate that the Basic Agreement prohibited a producer from requiring a covenant from an employee that he would refrain from conduct that might impair the marketability of the product.

The basic action in *Jarrico* was one for declaratory relief under the individual contract between the producer and writer. The Guild was not a

party and the issue was not the affirmance or vacation of an arbitration award. The case focused, as might be expected, on whether the writer's conduct breached the individual agreement. Breach of the Basic Agreement was not involved.

The court there upheld the producer's position and the trial court's finding that *Jarrico* had breached the agreement by bringing himself into public disgrace. In so holding, the court stated that the Basic Agreement was irrelevant to the issue presented.

One passage from the opinion was that the producer's exercise of its freedom of contract guaranteed by the Constitution could not be prevented by the Guild or the Basic Agreement. We consider that phrase to be dicta in the context of that case. Further, text writers have interpreted that passage as applying to matters outside the terms of the Basic Agreement. (41 Cal.Jur.3d, Labor, § 114, pp. 375-376.)

Here we deal with an award flowing from arbitration proceedings established under the Basic Agreement and premised on a breach of the Basic Agreement—a breach which all concede occurred.

■ An arbitration award may be vacated by a court only on strict and specific grounds. Insofar as is relevant here, under Code of Civil Procedure section 1286.2, those grounds are that the arbitrator exceeded his power.

The generally accepted rule is that an error of law by an arbitrator is not grounds for vacating an award. In other words, it is within the power of the arbitrator to make a mistake either legally or factually. When parties opt for the forum of arbitration they agree to be bound by the decision of that forum knowing that arbitrators, like judges, are fallible.

In *Abbott* v. *California State Auto. Assn., supra,* 68 Cal.App.3d 763, relied on by the Producer, the court traced two lines of cases dealing with errors of law by an arbitrator. One line exemplified by *State Farm Mut. Auto. Ins. Co.* v. *Guleserian,* 28 Cal.App.3d 397 [104 Cal.Rptr. 683], and *Durand* v. *Wilshire Ins. Co.,* 270 Cal.App.2d 58 [75 Cal.Rptr. 415], adopts an absolutist position of refusing to vacate an award for an error of law no matter how patent. The *Abbott* court, however, in a case of unique and peculiar circumstances, came down on the side of a line of cases following a more flexible approach exhibited by *Allen* v. *Interinsurance*

*Exchange,* 275 Cal.App.2d 636 [80 Cal.Rptr. 247]; *Campbell* v. *Farmers Ins. Exch.,* 260 Cal.App.2d 105 [67 Cal.Rptr. 175], and *Jefferson Ins. Co.* v. *Superior Court,* 3 Cal.3d 398 [90 Cal.Rptr. 608, 475 P.2d 880], holding that where there is an error of law appearing on the face of the award resulting in a *substantial injustice,* the award *may* be vacated.

■ In the case before us no error of law appears on the face of the award. The award appears to be a proper sanction for breach of the Basic Agreement. True the Guild has other sanctions available to it such as withholding union recognition of offending producers and striking against such producers. On the other hand, the underlying purpose of collective bargaining and the reason why such contracts find favor with the courts is the prevention of labor strife and the economic disruption which accompanies it.

■ In reviewing arbitration awards in the labor-management field, the courts are more restricted in their power to vacate than in other types of arbitration. (*Safeway Stores, Inc.* v. *Brotherhood of Teamsters,* 83 Cal.App.3d 430 [147 Cal.Rptr. 835]; *Steelworkers* v. *Warrior & Gulf Co.,* 363 U.S. 574 [4 L.Ed.2d 1409, 80 S.Ct. 1347]; *Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169 [14 Cal.Rptr. 297, 363 P.2d 313].)

Labor Code section 1126 provides: "Any collective bargaining agreement between an employer and a labor organization shall be enforceable at law or in equity, and a breach of such collective bargaining agreement by any party thereto shall be subject to the same remedies, including injunctive relief, as are available on other contracts in the courts of this State."

This statute would appear to militate against Producer's version of *Jarrico* and its application here. If Producer could be enjoined from violating the Basic Agreement (cf. *Montaldo* v. *Hires Bottling Co.,* 59 Cal.App.2d 642 [139 P.2d 666]) then certainly an after-the-fact sanction of a monetary award would be no more onerous in terms of impairing freedom of contract.

As to Producer's claim of injustice perhaps the answer lies in a gratuitous statement contained in its own brief where it says "He [Montagne] freely accepted a job with a termination option because he knew that without it the Employer would have found another more experienced director."

■ The very purpose of the Basic Agreement was to put a floor under directors' compensation and to prevent producers, with their obvious leverage, from requiring directors who, for one reason or another lacked individual leverage, to agree to work for less money in order to obtain employment. Failure to enforce the Basic Agreement by sanctioning individual contracts in contravention thereof would render it meaningless.

The judgment is affirmed.

Fleming, Acting P. J., and Beach, J., concurred.