Filed 1/16/24  Weisburd v. Blank Rome LLP CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STEVEN WEISBURD et al., | B321285 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC721631) |
| v. | |
| BLANK ROME LLP, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Kellner Law Group and Richard L. Kellner for Plaintiffs and Appellants.

Latham & Watkins, Daniel Scott Schecter, Gregory W. Swartz and Alice R. Hoesterey for Defendant and Respondent.

———————————

# INTRODUCTION

Plaintiffs are a group of 15 former equity partners of Dickstein Shapiro LLP (Dickstein) and appeal from the judgment confirming an arbitration award in favor of defendant Blank Rome LLP (Blank Rome).[1]  They contend the arbitrator exceeded his authority by not following a summary judgment procedural framework purportedly agreed to by the parties and ruling for Blank Rome notwithstanding the existence of disputed issues of fact.  We conclude the arbitrator did not exceed his authority, and that any arbitral errors in deciding the dispute did not provide a basis for the trial court to vacate the award.  Accordingly, we affirm the judgment confirming the arbitration award.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Parties and Their Dispute*

Before closing its doors in 2016, Dickstein was a national law firm with offices in New York City, Washington, D.C., Stamford, Connecticut, and Los Angeles and Menlo Park, California.  Its partners were bound by a written partnership agreement, several provisions of which are relevant to this action.

---

[1]  Plaintiffs are Steven Weisburd, Robert Dickerson, Jr., Larry Eisenstat, David Elkind, Arnold Gulkowitz, Leslie Jacobs, Richard LaCava, Lawrence LaPorte, Robert Mangas, Bernard Nash, David Randall, John Schryber, Diane Smoyer, Edward Tessler and Andrew Zausner.  Two other former Dickstein Shapiro partners, Neil Lefkowitz and Patrick Lynch, dismissed their claims against Blank Rome after the court's order confirming the arbitration award and are not parties to this appeal.

First, paragraph 9(b)(1) of the agreement provided that withdrawing partners would be repaid the positive balance of their capital account in four annual installments, with 6 percent simple interest added to the final three annual installments. That paragraph further provided that in the event "the partnership is in liquidation at the time any installment payment of a capital account would otherwise be payable, such payment shall not be made except at the time of repayment of the capital accounts of non-withdrawing equity partners and shall then be subject to pro-rata reduction, as to unpaid installments only, on the same proportional basis as the capital accounts of the non-withdrawing equity partners." (Capitalization and emphasis omitted.)

Second, paragraph 9(b)(2) provided that for retired partners, the capital account balance would be paid in full within 60 days of retirement. Third, paragraph 15 of the partnership agreement provided for arbitration of any disputes arising from the partnership agreement.[2] As relevant here, the arbitration clause provided as follows:

> In the event of any dispute with regard to the interpretation or application of this Agreement . . . the matter shall be determined by a confidential arbitration before an arbitrator designated by the disputants . . . .

---

[2] Nash withdrew from the partnership on terms set out in an "Agreement and General Release" dated April 30, 2015. Paragraph 4 of that agreement provides for arbitration "conducted in accordance with the procedures and provisions of paragraph 15 of the Partnership Agreement." Plaintiffs do not contend the arbitrator's powers differ in the two agreements; thus, we limit our discussion to the partnership agreement.

3

Failing such designation, the matter shall be put before a single arbitrator designated by the American Arbitration Association who shall have served as the managing partner or in an equivalent position of a law firm which, at the time of such service, was listed in the American Lawyer AmLaw200. The arbitrator shall determine the procedures to be employed in such arbitration, and his/her decision on procedural and substantive matters shall be final and binding upon the parties, their heirs and legal representatives.

The partnership agreement's choice of law provision provided that, "All questions arising under this Agreement shall be governed by the law of the District of Columbia."

Dickstein began suffering significant financial problems exacerbated by the departures of attorneys. After a potential merger with another law firm fell through in late 2015, Dickstein and Blank Rome began negotiations that resulted in an asset purchase agreement dated February 1, 2016. While the parties here dispute certain terms of the agreement, in substance Blank Rome agreed to acquire some, but not all, of Dickstein's assets and liabilities. Blank Rome did not assume certain service contracts or the lease for Dickstein's New York office, and it did not offer permanent employment to all of Dickstein's employees. Most important for purposes of this action, Dickstein did not pay plaintiffs the outstanding balances of their respective capital accounts, and Blank Rome did not assume that obligation.

In September of 2018, plaintiffs filed suit against Blank Rome. Their first amended complaint alleged two causes of action. First, it sought a declaration the February 1, 2016 asset purchase agreement was a de facto merger of Dickstein and Blank Rome, thereby making Blank Rome responsible for

4

plaintiffs' unpaid capital accounts.  The second cause of action was for breach of the partnership agreement with Dickstein for failing to pay the capital accounts.  Plaintiffs sought money damages equal to the value of their unpaid capital account balances, including interest, in an amount plaintiffs calculated to be over $4 million.

B.      *The Arbitration, the Award, and the Judgment*

On November 18, 2018 Blank Rome moved to compel arbitration of plaintiffs' claims.  Blank Rome relied on the arbitration clause in the partnership agreement, and argued plaintiffs could not enforce those provisions of the partnership agreement providing for repayment of their capital account balances without also being bound by the arbitration clause.  Plaintiffs opposed, arguing Blank Rome could not deny liability for plaintiffs' capital accounts while insisting it could enforce the arbitration clause, and that the declaratory relief cause of action was unrelated to the partnership agreement and thus non-arbitrable.  Rather than compel arbitration, plaintiffs urged the court to deny Blank Rome's motion and instead stay proceedings on their cause of action for breach of contract, while proceeding to trial on the declaratory relief cause of action.

The court granted Blank Rome's motion in part and ordered the parties to arbitrate the breach of contract claim.  But the court agreed with plaintiffs their declaratory relief claim was not arbitrable because it "simply seeks a declaration as to whether there was a de facto merger or asset sale" between Dickstein and Blank Rome, a question "not premised on or intertwined with" the partnership agreement.  The court denied plaintiffs' request to stay arbitration of the contract claim while

5

proceeding to trial on the claim for declaratory relief, "because the Court believes the first cause of action was artfully pled to avoid arbitration and that [a] stay in this instance would be contrary to the strong policy in favor of arbitration."

In the months that followed, the parties met and conferred and agreed to hire Roger E. Warin, a former chair of Steptoe & Johnson LLP, to serve as the arbitrator. Plaintiffs agreed to submit their declaratory relief cause of action to binding arbitration before Warin, giving him "full jurisdiction to determine the cause of action."

At the arbitrator's request, the parties submitted proposals for the procedures to be used in arbitration. The record does not reflect the parties mutually agreed on the procedures for the arbitration. Instead, each party submitted its own separate proposal. Blank Rome's submission is not in the record, but plaintiffs' submission indicates Blank Rome filed its submission first and that Blank Rome suggested it would file a summary judgment motion. Plaintiffs' proposal was for each party to have the opportunity to file a summary judgment motion, preceded by "'narrowly tailored'" discovery. According to plaintiffs, their proposal "addresses the rights of both parties, and provides an expedited method for the potential full adjudication of both causes of action."

On October 19, 2019 the arbitrator issued a "Decision Regarding Proposed Phasing of Arbitration" that provided as follows:

> The Arbitrator previously requested that Claimants and Respondent submit proposals addressing the phasing of this case, and the parties did so on September 18, 2019 and September 20, 2019.

6

> The proposals disclose that both sides believe this dispute may be resolved through summary judgment motions. The Arbitrator believes it is in both sides' interest to conclude this matter via such motions. Resolution through summary judgment has the potential to save the parties considerable time and money. If summary judgment is not feasible, however, the Arbitrator is prepared to utilize other methods to decide this dispute, including through a possible evidentiary hearing.

The arbitrator directed the parties to prepare "a list of material facts that are not in dispute" and "a separate list of the arguably material facts, if any, as to which they do not agree, together with the reasons why such facts are disputed. The Arbitrator anticipates that there will be few, if any, disputed material facts." The arbitrator's order did not reference or incorporate the summary judgment procedures of any jurisdiction.

After engaging in discovery authorized by the arbitrator, the parties filed their respective cross-motions and responses thereto. The parties submitted an 11-page list of "stipulated undisputed facts," and each party also submitted additional evidence attached to attorney declarations. The record before us does not reflect the parties submitted a list of "disputed material facts" to the arbitrator. The parties' cross-motions contained pro forma recitations of federal and/or California summary judgment standards, but did not argue disputed factual issues existed or otherwise precluded a ruling. Instead, each party argued it was entitled to a ruling in its favor based on the evidence before the arbitrator. The cross-motions were argued to the arbitrator on May 4, 2021.

7

On September 2, 2021 the arbitrator issued his award in Blank Rome's favor, captioned "Decision Regarding the Parties' Cross-Motions for Summary Adjudication." The award "grants Respondent's motion for summary judgment, dismisses the claims brought against Respondents by Claimants, and denies Claimants' summary judgment motion."

In summary, the arbitrator first determined that applying the de facto merger doctrine would be inequitable, because doing so would put plaintiffs in a better position than they would have been but for the agreement between Dickstein and Blank Rome, and that it would give plaintiffs an advantage over the Dickstein partners who did not leave the firm prior to its dissolution, none of whom were reimbursed for their capital accounts. The arbitrator examined the four factors generally used to determine whether a de fact merger has occurred. He ruled that two of those four factors—continuity of enterprise (including continuity of management) and assumption of Dickstein's liabilities—"weigh heavily against application of the [de facto merger] doctrine." As to the remaining two factors, while "the dissolution of the seller factor substantially favors the doctrine's application," "the continuity of ownership factor does so only slightly." Weighing these factors, the arbitrator ultimately concluded that "under these circumstances, and even apart from equitable considerations, the de facto merger doctrine should not be applied."

Blank Rome filed a timely motion to confirm the award, and plaintiffs moved to vacate the award on the ground the arbitrator exceeded his powers. In support of their motion to vacate, plaintiffs argued the motions for summary judgment were just "the first phase" of the case, and that the arbitrator "'pulled

the rug' from under Plaintiffs by treating the summary judgment submissions as a 'trial on the merits.'" Following a hearing on February 15, 2022 the trial court denied plaintiff's motion to vacate and granted Blank Rome's motion to confirm the award. The trial court specifically rejected plaintiffs' contention the arbitrator exceeded his authority by granting Blank Rome's summary judgment motion: "The Arbitrator set forth how the arbitration would proceed based on his evaluation of the Parties' submissions. The Arbitrator did not circumscribe the Arbitration Agreement or otherwise alter the scope of his authority. Whether the Arbitrator properly applied the analytical framework for summary judgment proceedings is therefore a distinct issue from whether he exceeded the scope of the authority conferred upon him by the Arbitration Agreement. Because the Court interprets CCP section 1286.2 narrowly, the Court finds that the Arbitrator did not exceed his authority pursuant to the Arbitration Agreement. For this reason, the Court need not consider whether the Arbitration Award is based on an improper evaluation of the Parties' MSJs."

The court entered judgment on April 7, 2022, and plaintiffs timely appealed.

## DISCUSSION

A.    *Appealability and Standard of Review*

A judgment confirming an arbitration award is appealable. (See Code Civ. Proc., § 1294, subd. (d).) On appeal from the judgment, we may also review the order denying plaintiffs' motion to vacate the award. (See § 1294.2; accord, *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 766; *Mid-Wilshire*

9

*Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1454.) We review de novo "whether the arbitrator exceeded his powers and thus whether we should vacate his award on that basis." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, fn. 1.) While our review of the trial court's decision is de novo, we defer to the arbitrator's assessment of his powers. "Although section 1286.2 permits the court to vacate an award that exceeds the arbitrator's powers, the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 372 (*Advanced Micro Devices*).) We are also required to make "every reasonable inference to support the award." (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 24.)

B.     *The Scope of Our Review of the Arbitrator's Award Is Limited*

Petitions to confirm or vacate arbitration awards are governed by sections 1286 and 1286.2 of the Code of Civil Procedure.[3] Section 1286 provides that, "the court shall confirm the award as made . . . unless . . . it corrects the award and confirms it as corrected, vacates the award or dismisses the proceedings." Section 1286.2 sets out the grounds on which a court "shall vacate" an award, including the ground relied on by plaintiffs: "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).)

_____

[3]     Undesignated statutory references are to the Code of Civil Procedure.

10

These statutes limit the scope of our review of the award. The California Supreme Court expressly held that "an award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in sections 1286.2 (to vacate) and 1286.6 (for correction)." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 33 (*Moncharsh*).)  Accordingly, "[w]e do not review the merits of the dispute, the sufficiency of the evidence, or the arbitrator's reasoning, nor may we correct or review an award because of an arbitrator's legal or factual error, even if it appears on the award's face.  Instead, we restrict our review to whether the award should be vacated under the grounds listed in section 1286.2." (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 347.)

"[I]t is within the power of the arbitrator to make a mistake either legally or factually.  When parties opt for the forum of arbitration they agree to be bound by the decision of that forum knowing that arbitrators, like judges, are fallible." (*That Way Production Co. v. Directors Guild of America, Inc.* (1979) 96 Cal.App.3d 960, 965.)  Just as we do not directly review the award for legal or factual error, we do not directly review the award under the guise of ensuring that the arbitrator did not exceed his powers.  "It is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' [Citations.]  A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers." (*Moncharsh,* at p. 28.)

11

C.      *The Arbitrator Did Not Exceed His Authority*

Plaintiffs argue, as they did in the trial court, the award must be vacated because the arbitrator exceeded his powers due to his "failure to follow the procedural framework under which the arbitration was to be conducted." It is plaintiffs' burden to show the arbitrator exceeded his powers. (See *Lopes v. Millsap* (1992) 6 Cal.App.4th 1679, 1685; *Rosenquist v. Haralambides* (1987) 192 Cal.App.3d 62, 67; see also *Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923 ["There is a presumption favoring the validity of the award, and appellant bears the burden of establishing [a] claim of invalidity."].) Plaintiffs characterize the arbitrator exceeding his authority as follows: "Under the procedural framework established for the arbitration[] [i]n the first phase . . . the Arbitrator was to determine whether the parties' claims were amenable to summary judgment. If the case was not amenable to summary judgment disposition, the next phase would be a potential evidentiary trial. In disregard of the procedural framework established for adjudication of the case, the Arbitrator treated first-phase summary judgment submissions as a trial on the merits." Plaintiffs' contention is unpersuasive.

Generally, "[a]rbitrators may exceed their powers when they act in a manner that is not authorized by the arbitration agreement." (*California Union Square L.P. v. Saks & Co. LLC* (2020) 50 Cal.App.5th 340, 348.) "In determining whether an arbitrator exceeded his or her powers, we look to the parties' arbitration agreement to see if and how it limited the arbitrator's authority because arbitrators have no powers beyond those conferred upon them by the arbitration agreement; their powers ""derive from, and are limited by, the agreement to arbitrate.""

12

(*Id.* at p. 349; accord, *Greenspan v. LADT LLC* (2010) 185 Cal.App.4th 1413, 1437; see *Moncharsh, supra*, 3 Cal.4th at pp. 8, 10.)

Accordingly, we first examine the partnership agreement and the arbitration clause to see if these writings placed any limitations on the arbitrator's authority, including the use of a summary judgment procedure. The partnership agreement and the arbitration clause did not place any limitations on the arbitrator's authority over procedural matters. Instead, the arbitration clause expressly gave the arbitrator broad powers to "determine the procedures to be employed in such arbitration," and further provided that "his/her decision on procedural and substantive matters shall be final and binding upon the parties."

In accordance with his authority, the arbitrator asked the parties to submit procedural frameworks for the arbitration, and each party separately suggested summary judgment motions. But plaintiffs do not persuasively demonstrate these separate submissions somehow constrained the arbitrator's authority over procedural matters. (See *Advanced Micro Devices, supra,* 9 Cal.4th at p. 389 ["the parties to an arbitration have the freedom to determine the rules by which their dispute will be resolved"].) While we will enforce an "express and unambiguous" contractual limitation on the arbitrator's powers, we cannot infer such a limitation when the parties failed to impose one. (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1182 ["Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation."].)

13

Instead, plaintiffs maintain the arbitrator's October 18, 2019 order set forth the procedural framework for the arbitration and thereby narrowed the scope of the arbitrator's authority. But the arbitrator's order merely recognized that "both sides believe this dispute may be resolved through summary judgment motions" and that "[t]he Arbitrator believes that it is in both sides' interest to conclude this matter via such motions." The arbitrator's order did not define what it meant by summary judgment, nor did it incorporate any specific procedural framework for ruling on such motions. For example, the order did not tether itself to the framework applicable to the parties' choice of law provision (District of Columbia Rule of Civil Procedure 56), that of the forum where the underlying litigation was filed (§ 437c), or any other such standard.

The arbitrator's order reflected he retained his broad authority over procedural matters and further provided that: "If summary judgment is not feasible, however, the Arbitrator is prepared to utilize *other methods* to decide this dispute, including through a *possible* evidentiary hearing." (Italics added.) Again, this language does not obligate the arbitrator to follow any particular procedure in adjudicating the parties' claims, highlights the arbitrator had authority "to utilize other methods to decide this dispute," and makes clear that any "evidentiary hearing" was not guaranteed but, instead, was merely "possible."

We agree with the trial court this language does not support plaintiffs' contention the arbitrator "pull[ed] the rug" from under them when he "unilaterally abandoned the agreed-upon procedural framework for the first phase of the arbitration—the adjudication of submissions to determine whether the case was amenable to summary judgment." Both

14

sides stated they would submit summary judgment motions, but did not define what that meant with any particularity, let alone expressly limit the arbitrator's authority over procedural matters in the arbitration. In that context, exercising his powers to determine procedural matters the arbitrator apparently determined it was "feasible" to resolve the dispute based on the parties' cross-motions and without an "evidentiary hearing." Plaintiffs have not pointed to any language in the partnership agreement, the arbitration clause, or elsewhere that prevented the arbitrator from adopting a "summary judgment" procedure he determined was best suited to resolve the parties' dispute.[4] In short, the arbitrator's determination was not inconsistent with the arbitration clause or the October 18, 2019 order.[5]

---

[4] In other contexts, summary judgment merely refers to a summary procedure for adjudicating claims, rather than one where the adjudicator's resolution of the merits of the parties' claims is precluded by material factual disputes. (See, e.g., *People v. Financial Casualty & Surety, Inc.* (2021) 73 Cal.App.5th 33, 37 ["'[s]ummary judgment following a declaration of forfeiture is a consent judgment entered without a hearing pursuant to the terms of the bail bond'"]; see Pen. Code, § 1306, subd. (a).)

[5] Although not dispositive, the record does not reflect the parties presented the arbitrator with a list of disputed material facts, notwithstanding his order requesting it. Further, as noted above, the parties' "summary judgment" motions, while citing federal and California summary judgment standards, in essence each argued why the respective party was entitled to a ruling in its favor rather than that material factual disputes precluded a ruling in the other party's favor.

At bottom, plaintiffs' argument for vacating the award is that the arbitrator ignored or resolved disputes of material fact.[6] Division One of this district expressly held this is not a basis on which to vacate an arbitrator's award. In *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, the plaintiff appealed from a judgment confirming an arbitration award in a dispute over the amount owed to him following his resignation from his law firm. As in this case, the arbitrator decided the dispute on cross-motions for summary judgment. Schlessinger moved to vacate the award, arguing the arbitrator had no authority to grant summary judgment, and that even if he did the existence of disputed issues of fact prevented the arbitrator's granting of summary judgment against him. After first concluding summary judgment was a permissible remedy because it was not excluded by the parties' agreement, *Schlessinger* held that any error in granting summary judgment was not reviewable. *Schlessinger* reasoned that "even if the

---

[6]     For example, plaintiffs argue the following statements in the arbitrator's decision reflect he "determined the full merits of the case": "There is substantial evidence that Dickstein was facing serious difficulties at the time it entered into the Subject Transaction. Had Dickstein not completed the Subject Transaction, the evidence strongly suggests that Dickstein would have faced the prospects of bankruptcy. Alternatively, given its financial difficulties, Dickstein partners may have voted to dissolve the firm. Under either of these scenarios, it is highly unlikely that Claimants would have recovered any part of their capital accounts. . . . [¶] Blank Rome has provided persuasive evidence that, as of late December 2015, Dickstein was unlikely to survive much longer absent the deal with Blank Rome. . . . [¶] The weight of the evidence also establishes that Blank Rome paid a fair price for Dickstein's assets." (Emphasis omitted.)

16

arbitrator erred in concluding that there were no disputed issues of material fact, the trial court properly refused to vacate the award on that basis." (*Id.* at p. 1109, citing *Moncharsh*, *supra*, 3 Cal.4th at p. 33 ["the existence of an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review"].) Plaintiffs have not offered a persuasive reason to depart from *Schlessinger* or *Moncharsh*.[7]

Plaintiffs' legal authorities are distinguishable. The common thread in those cases is that each involved an arbitration agreement that—unlike the arbitration clause here— clearly and unambiguously limited the scope of the arbitrator's authority. For example, in *California Union Square L.P. v. Saks & Co. LLC, supra,* 50 Cal.App.5th at pages 349 to 350, the arbitration agreement stated the arbitrator "could 'consult experts and competent authorities with factual information or evidence' only if he did so 'in the presence of both parties with full right on their part to cross-examine.'" The court properly found the arbitrator exceeded his authority when he traveled on his own to New York to personally investigate the lease terms of a retail store and relied on that investigation to prepare his award.

---

[7] Plaintiffs distinguish *Schlessinger* on the basis the plaintiff there challenged the arbitrator's ruling that there were no factual disputes, whereas here, "the Arbitrator failed to make any determination regarding the existence (or non-existence) of material facts." (Emphasis omitted.) This is a distinction without a difference because the arbitrator here did not adopt any particular summary judgment framework and, even if he did, the resulting arbitration decision suggests the arbitrator determined no factual disputes precluded him from ruling or that he committed legal error. *Moncharsh* precludes us from reviewing either contention.

17

(See *id.* at p. 350 ["the parties took pains to define the narrow scope of the arbitrator's duties"].)

In *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1049, the arbitration clause barred the arbitrator from awarding "any remedy which is either prohibited by the terms of this Agreement . . . or not available in a court of law." There, the arbitrator exceeded his powers when he issued an award calling for forfeiture of partners' capital accounts, in violation of both the partnership agreement and California law.[8] Finally, under the agreement at issue in *California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, 946, "the arbitrator's limited task is to review the [tenure] decision-making process, under certain specific standards." The court of appeal held that the limiting language in the arbitration clause prevented the arbitrator from second-guessing the university president and awarding tenure to a faculty member.

In sum, the trial court correctly denied plaintiffs' motion to vacate the arbitration award in favor of Blank Rome. (See *Darby v. Sisyphian, LLC* (2023) 87 Cal.App.5th 1100, 1113 ["if an award cannot be vacated or corrected, it must be confirmed"] disapproved on another ground in *Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 952, fn. 3; *Louise Gardens of Encino Homeowners' Association, Inc. v. Truck Insurance Exchange, Inc.* (2000) 82 Cal.App.4th 648, 660.)

---

[8] Although the arbitrator ruled against plaintiffs here, they advance no argument such ruling constituted a forfeiture of their capital accounts prohibited by the partnership agreement.

## DISPOSITION

The judgment confirming the arbitration award is affirmed. Blank Rome shall recover its costs on appeal.


MARTINEZ, J.

We concur:


FEUER, Acting P. J.


EVENSON, J.*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19